## COLLIER, EXEC'R, *vs.* SLAUGHTER'S ADM'R.

1. A condition annexed to the vesting of a legacy requiring the guardian's approbation of the legatee's marriage, is not *in terrorem* only, when the condition is confined to marriage under twenty-one, and there is a limitation over.

2. When a legacy is given, to vest upon the legatee's arriving at the age of twenty-one, or marrying before that time with the approbation of her guardian, and the legatee marries under twenty-one with the consent of her grandfather, with whom she is living at the time, this is not a compliance with the condition, although at the time her father and mother are dead, and she has no legally constituted guardian.

3. A testator by will directed that his estate should be kept together until his daughter married or attained the age of twenty-one, and that in the meantime she, and his three step-children, Ellen, John and Lawrence, should be supported and educated out of the proceeds. Another clause was in the following words: " When my daughter becomes of age, or is married, she is to have my farm," &c. (describing it), " and one half of my personal estate, money on hand, and claims of every kind due or to become due for money or personal estate ; the other half of my personal estate, as just above stated, I wish and direct to be equally divided amongst my three step-children above named, as they respectively become of age, or Ellen may marry with the approbation of her guardian. But in the event that any or all of my step-children shall die before they arrive of age, or Ellen may marry as aforesaid, then the amount herein devised to them or either of them. as may happen, is to be divided as follows," &c. *It was held,*

   That the legacies to the step-children did not vest in them absolutely upon the testator's death, but were contingent until the legatees respectively arrived at the age of twenty-one, or Ellen married with the approbation of her guardian ; and that, Ellen having married under twenty-one without the approbation of her guardian, the share of one of the step-children who afterwards died, before reaching the age of twenty-one, did not pass to his personal representative.

ERROR to the Court of Probate of Limestone.

JAMES ROBINSON and J. W. SHEPHERD, for plaintiff in error :

1. The legacies to the step-children did not vest on the testator's death, but were contingent until the happening of the specified event. The bill of exceptions shows that Ellen was born in 1823, John in 1825, and Lawrence in 1827, while Amy, the testator's daughter, was born in 1830 or 1831. The three step-children, then, would arrive at the age of twenty-one, if they lived, before Amy became of age, and probably before her marriage. But the whole estate was to be kept to-

gether until Amy attained her majority or married, and this is the general intent of the testator. The *division* then among the step-children must refer to the *vesting* of their legacies, and not to the time of *payment.* A different construction would make the testator deal more kindly towards his step-children than towards his own daughter; for if each one of the step-children was entitled to have a division of the whole estate, and to withdraw his share on attaining majority, the entire burthen of the support, maintenance and education of the others would be thrown upon Amy.

2. Ellen's marriage controlled the vesting of her own share only, and had no connection with the vesting of her brothers' shares. The testator did not intend that all the legacies should vest at the same time. There was no reason why the shares of her two brothers should be made to depend upon Ellen's marriage. They could not in any manner control or affect her conduct. The condition which was annexed to her marriage shows that it was personal, and was not intended to apply to the shares of her brothers. Her share vested on her marriage "with the approbation of her guardian," or attaining twenty-one; theirs vested only on their arriving at twenty-one.

3. But if Ellen's marriage controlled the vesting of her brothers' legacies, then it must be shown that her marriage was had " with the approbation of her guardian." The proof shows that her father and mother were both dead at the time of her marriage, and that no guardian was ever appointed for her by any court. The grandfather, as such, was not her guardian. 1 Black. Com. 380; 2 Kent's Com. 220. And even if he were, the " written *consent*" which he gave was not equivalent to " *approbation.*" It was the duty of Ellen, after she arrived at the age of fourteen, to apply to the proper court for the appointment of a guardian. In default of her so doing, the legacies could not vest upon her marriage. Marriage with approbation was a condition precedent to the vesting of the legacies. If void, *as a condition,* still it was good as a limitation of time; it marks the time at which the legacies were to vest.

4. The condition does not fall within any of the classes of conditions which are held void because in restraint of mar-

riage, 1. It is a condition *precedent*. 2. It is confined to marriage *under twenty-one*. 3. There is a bequest over. 4; Marriage with approbation is only *one of two events*, on either of which the legacies will vest. 1 Jarm. on Wills, 836; 1 Powell on Devises, 282; Scott v. Tyler, 2 Brown's Ch. 431; Smith's Lead. Cas. in Eq. vol. 2, 89, (71 Law Lib. 266.)

R. C. BRICKELL and WM. H. WALKER, *contra :*

1. This is a vested legacy, to be divested upon certain contingencies. It has the usual accompaniment of a vested legacy, viz: the gift of the interest or use. 8 Ala. 687; 6 Paige, 541.

2. But conceding that the legacies did not vest until the marriage of Ellen, they certainly vested in all the step-children upon the happening of that event. The testator evidently intended that all the legacies should, in one contingency, vest at the same time, viz: the marriage of Ellen. The language of the clause certainly makes the shares of her brothers depend upon Ellen's marriage, just as her own share, and there is nothing unreasonable in such a bequest. When the language is clear and explicit, as in this case, the court cannot make a will for the testator, by adding words which entirely change the meaning of the clause. Roper on Legacies, 1460.

3. There was a substantial compliance with the condition imposed upon Ellen to marry " with the approbation of her guardian." It is a settled rule of law, that conditions precedent, which are to create an estate, ought to receive a liberal construction, and if the condition be performed as near to the intent as possible, it will be sufficient. Crabb's Real Property. vol. 2, § 253. At the time of the testator's death, Ellen had no guardian, and he appointed none for her. She took no estate under the will which could pass to a guardian. Hence the testator could not have intended to require the consent of any particular person, but only to guard against an improvident marriage, by requiring the approval of the person who happened at the time to stand in the relation of guardian. There is no difference here between "*consent*" and "*approbation*." When consent is required and given, *however reluctantly*, it is sufficient. Dashwood v. Bulkley, 10 Ves. 251.

The consent of the grandfather in this case was sufficient. Ellen had lived with him from the time of the testator's death up to the time of her marriage, and he stood *in loco parentis* to her. If he had taken possession of her estate, the court would have treated him as her guardian, and made him account as such. 9 Porter, 636. So, he could have maintained an action for her abduction. 7 Watts, 502, cited in Reeve's Domes. Rel. 293. The restriction imposed by the will is precisely the same imposed by statute. Could this court hold that the penalty given by the statute is recoverable of the clerk, for having issued the license of marriage upon the written consent of the grandfather? If not, it must be because there was a substantial compliance with the requisitions of the statute.

4. But if the condition was not performed, it was dispensed with. The duty of appointing a guardian devolved upon the Orphans' Court, and that court having neglected to perform its duty, Ellen cannot be made responsible for its default. Where a literal compliance becomes impossible, from unavoidable circumstances, and without the party's default, it is sufficient that it be complied with as near as may be. 1 Story's Equity, § 291. Where the condition becomes impossible, by the death of the person whose consent was required, the condition is dispensed with. White & T.'s Lead. Cas. vol. 2, 326. Where written consent was required by the will, the courts have dispensed with it, and held verbal consent sufficient, 12 En. Ch. R. 19 ; 1 Sim. & St. 165. Where the condition has been performed *to a reasonable intent*, the court has dispensed with the want of circumstances, 1 Atkyns, 361.

DARGAN, C. J.—William E. Collier, by his last will and testament, directed, that after the payment of his debts, all his estate should be kept together until his daughter Amy should marry or attain the age of twenty-one years, and in the mean time she was to be supported and educated from the proceeds of his estate. After making some provision for the father and mother of the testator's deceased wife, the will proceeds in the following language; "It is also my wish that my three step-children, Ellen F., John R., and Lawrence S. Slaughter, shall be kept, supported, and educated out of the

proceeds of my estate, until the marriage or mature age, as above stated. When my daughter become of age, or is married, she is to have my farm in Limestone county, on which I now reside, with all the improvements and appurtenances, and one-half of all my personal estate, money on hand, and claims of every kind, due or to become due, for money or personal estate. The other half of my personal estate, as just above stated, I wish and direct to be equally divided amongst my three step children above named, as they respectively become of age, or Ellen may marry with the approbation of her guardian. But in the event that any or all of my step children shall die, before they arrive of age, or Ellen may marry, as aforesaid, then the amount herein devised to them, or either of them, as may happen, is to be divided as follows, to wit; one-half of such share to my daughter, one-fourth to the children of Dr. Young, and the other fourth to the children of C. E. Collier."

The step children named in the will are all older than the testator's daughter, and Ellen is the eldest of the step children. After the death of the testator, Ellen married George W. Marshall. She was about fifteen years of age at the time of marriage, but had no guardian. Before her marriage, however, she applied to the acting executor of the will for his consent to marry, but he refused. She then applied to her grandfather, with whom she was living, and he also refused to give his consent, and persisted in his refusal, until he was informed that if he did not consent, the parties would elope and marry elsewhere. He then consented to the issuance of the marriage license, but the parties were not married at his house.

Shortly after the marriage of Ellen, Lawrence S. Slaughter died, being a minor at the time of his death, and his administrator claims the legacy bequeathed to him by the testator. These facts give rise to the material question in the case, which is this; Was the legacy so vested in Lawrence S. Slaughter at the time of his death, as to be transmissible to his representatives?

It is too clear to admit of argument, that the legacies did not vest absolutely in the step children by the death of the testator. They could not demand payment until they arrived at age,

or until Ellen F., the step daughter, married with the appro-
bation of her guardian; for the will expressly gives the lega-
cies over, if either of the step children died before either of
these events. The legacies were then conditional, and be-
came vested in the legatees upon the happening of the one
or the other of these contingencies, and if neither of them
happened during the life of Lawrence S., his administrator
takes no interest in the legacy, nor can he call the executor of
the testator to an account, or demand payment of the legacy.

As the legatee died before he attained the age of twenty-
one, his legacy passed over to those who were to take in that
event, unless it became vested by the marriage of his sister,
Ellen F.; for by the terms of the will, we think it clear that
the testator intended, that if Ellen should marry with the
consent of her guardian, before she attained the age of twenty-
one, then all the step children named in the will became im-
mediately entitled to their legacies, and the subsequent death
of one of them before he attained his majority would not de-
vest his title, so as to enable those in remainder to take, but
the legacy, being vested by the marriage, passed, upon the
death of the legatee, to his representatives. The sole ques-
tion, therefore, is, did the marriage of Ellen vest the legacies
in the step children? In order to do this, we are all of the
opinion that the marriage must have been with the consent
of her guardian. This pre-requisite to the marriage, in order
to make it have the effect to vest the legacies, the testator, by
his will, required, and we do not see how we could hold the
pre-requisite unnecessary. It is true, that there are many
cases to be found where marriage with consent is held to be
*in terrorem* only, and if the legatee marry without consent,
he will not thereby forfeit his legacy: but where marriage
with consent is only one of two conditions upon which the
legacy is to vest, as where it is to vest upon marrying with
consent, or at a particular age, say twenty-one, I have found
no case which holds that the consent required by the testator
was *in terrorem* merely, and that the marriage, within itself,
and without the required consent, would vest the legacy.
In the case of Hemmings v. Munckly, 1 Coxe, Ch. R. 39,
the testator gave a legacy to his daughter on her attaining
the age of twenty-eight years, or day of marriage, which-

ever should first happen, provided his daughter should marry with the consent of his executor in trust. The daughter married without the required consent, and died before she attained the age of twenty-eight. It was held, that the legacy had not vested. The case of Scott v. Tyler, 2 Brown Ch. R. 431, is to the same effect; see also Jarman on Wills, Vol. 1, 838.

Nor can such conditions be held invalid, as being in restraint of marriage. The authorities above referred to show this, and besides, many prudential reasons may concur in influencing a parent to desire to restrain the marriage of his child, at least until he attains the age of majority, unless such marriage should take place with the consent of some one whose experience might be some protection against an imprudent or improvident marriage. The question, then, is narrowed down to this; did Ellen marry with the consent of her guardian, within the meaning of the testator? We are of the opinion that the testator meant that she should marry with the consent of her legally appointed guardian, or at least, with the consent of one who in law would be considered such. But the grandfather, as such, is not the guardian of his grandchild, and the marriage with his consent was not a compliance with the condition. It has, however, been urged, that as Ellen had no guardian, she could not comply with the condition, or more nearly comply than by marrying with the consent of her grandfather, with whom she resided. But according to our law, she could, by her own act, have had one appointed, whose consent would have been a legal compliance with the condition. She therefore could have married during minority, with the consent of her guardian legally appointed, but she has not done this, and therefore has not complied with the condition. The consequence is, that neither of the legacies vested upon the marriage of Ellen; they still remained contingent until the legatees should attain the age of twenty-one, and Lawrence having died before he was twenty-one, his legacy passed over to those entitled upon that contingency. It follows, that the decree of the Probate Court must be reversed, as the administrator of of Lawrence is not entitled to the legacy.

Decree reversed, and cause remanded.