# White v. Equitable Nuptial Benefit Union.

76  251
129  607

*Action on Policy of " Marriage Insurance."*

1. *Contract of marriage-brokage.*—A marriage-brokage contract is an agreement for the payment of money, or other compensation, for the procurement of a marriage; and it is held void on grounds of public policy, although there may be no fraud on either party.

2. *Contracts in restraint of marriage.*—Subject to modifications and limitations by the application of special rules, all contracts, whether executed or executory, creating a general prohibition of marriage, are contrary to public policy, and are void; but conditions in partial restraint of

[White v. Equitable Nuptial Benefit Union.]

marriage, in respect to time, place, or person, if reasonable in themselves, not materially and practically creating an undue restraint upon the freedom of choice, nor operating *in terrorem*, are valid.

4. *Contract or policy of marriage insurance.*—Under the charter of the defendant in this case, a private corporation, the object of which is declared to be "to unite acceptable young people in such a way as to endow each with a sum of money, not to exceed $6,000, to be paid at marriage or endowment, according to the regulations adopted;" a certificate of membership containing these provisions, "that no member will be entitled to any benefit whatever, who marries in less time than three months from the date of his certificate," and that "every member who shall have been in good standing, for at least three months prior to his marriage, shall be entitled to $40 per month upon each $1,000 named in his certificate, for each whole month of his membership, provided that the same shall never exceed $3,000, or so much thereof as shall be realized from one marriage assessment of all the members of this class," —is not a marriage-brokage contract, but is void on grounds of public policy, as operating an undue restraint of marriage, by offering an inducement for its indefinite postponement.

4. *Same; wager-policy.*—Such certificate being procured for the benefit of a third person, who was not related to the member by consanguinity or affinity, but who was to pay the dues and assessments, and was to receive two-thirds of the proceeds when collected, the contract is in the nature of a wager policy of insurance, and is void on principles of public policy.

5. *Action against corporation, and individual corporators; discontinuance.*—In an action commenced by attachment against three persons by name, who are described in the affidavit and writ as constituting a private corporation, and who are so named and described as defendants in the margin of the complaint; while the complaint declares against the corporation, describing it as composed of the persons so named; going to trial on such complaint, without objection, operates as a discontinuance of the action against the individuals, and converts it into an action against the corporation as sole defendant.

6. *Action on illegal contract.*—The courts will not lend their aid to enforce an executory illegal contract; and if a contract has been executed which contravenes good morals or public policy, the parties being *in pari delicto*, the courts will not interfere at the instance of either party with rights acquired by the other.

APPEAL from the Circuit Court of Madison.

Tried before the Hon. H. C. SPEAKE.

This action was brought by Alex. L. White, and was commenced by original attachment, which was sued out on 27th November, 1882. In the affidavit for the attachment, and in the writ of attachment, the defendants were described as "Oscar R. Hundley, William A. McNeely, and Alexander Erskine, jr., constituting the Equitable Nuptial Benefit Union, organized under the laws of Alabama;" and in the original statement of the parties' names, in the complaint, the same three persons were named as defendants, with the addition of the words, "who constitute the Equitable Nuptial Benefit Union;" while, in the body of the complaint, the plaintiff declared against " the Equitable Nuptial Benefit Union, a corporation composed of the defendants, Oscar

R. Hundley, William A. McNeely, and Alexander Erskine, jr.,
and duly incorporated under the laws of Alabama."

The action was founded upon a contract, called in the com-
plaint " a certain marriage insurance policy," which was dated
August 14th, 1882, under the corporate seal of said association,
signed by its president and secretary, and in these words :
" In consideration of the representations, agreements, covenants
and warranties, as stated in an application bearing even number
herewith, and of a membership fee of nine dollars, the receipt
of which is hereby acknowledged, we do receive as a member
George B. Vanderventer, of Birmingham, Alabama. The said
membership, and this certificate, is granted by virtue of au-
thority vested in said Union by the State of Alabama, and is
accepted by said member, subject to the following rules, regu-
lations, and conditions : 1. Assessments shall be collected of
members for the purpose of paying marriage benefits. 2. As-
sessments shall be due and payable at the office of the Union,
in Huntsville, Alabama, on the 14th day of each month subse-
quent to the date of this certificate. 3. It shall be the duty of
the officers to mail to each member, as often as may be neces-
sary to keep them advised of the times at which assessments
are due, the coupon notices adopted by this Union, and also to
furnish full information as to all disbursements of the Benefit
Fund ; giving names of beneficiaries, postoffice address, and
amount paid each. 4. The monthly assessment due on this cer-
tificate is thirteen dollars and twenty cents ($13.20), which
amount shall never be increased, except by a majority vote of
all the policy-holders. 5. The annual dues on this certificate
shall be eight dollars ($8), which must be paid on the 14th
day of September of each year of membership, at the office in
Huntsville. 6. It shall be the duty of the officers of the Union
to notify each member, by mail or otherwise, of the date when
this annual due is payable, at least thirty days previous to the
time of the payment of the same. 7. The mailing of notices
[of] dues and assessments, at the postoffice in Huntsville, shall
be considered legal and sufficient notice. 8. A member failing
to pay annual dues and assessments, on or before the days on
which they fall due, shall forfeit his membership, and his cer-
tificate becomes null and void, and all moneys paid thereon, or
because of his membership, shall be forfeited to the Union.
9. Marriage benefits are to be paid out of the Benefit Fund,
which is a trust fund held sacred for the purpose. This fund
shall be created by monthly assessments, collected from the
members, and deposited, subject only to checks drawn in favor
of beneficiaries, signed by the treasurer; and countersigned by
the president. Within ten days after the receipt of satisfactory
proof of the marriage of the above-named member (this certifi-

[White v. Equitable Nuptial Benefit Union.]

cate being then in force), and upon the surrender of this certificate, properly receipted, the Equitable Nuptial Benefit Union will pay to the legal holder thereof, at its office in Huntsville, such a sum of money as shall be due thereon, according to the laws, rules and regulations governing such payments; provided that, in no case, shall there be paid an amount exceeding $3,000. This certificate is issued by the Equitable Nuptial Benefit Union, and accepted by the above-named member, on the following expressed conditions and agreement : The person to whom this certificate is issued agrees to pay, at the office of the Union in Huntsville, Ala., an annual due of eight dollars ($8), with such marriage assessments as may be required under the laws, rules and regulations governing the Union ; and·if the statements made in the application for the certificate, which, it is hereby agreed and understood, shall form the basis of, and become a part of this contract, should be untrue in any respect, or if the annual dues and assessments be not paid as hereinbefore provided, then this certificate shall be null and void, and all moneys paid thereon shall be forfeited to the Union. Within ten days after receipt of satisfactory proof of the marriage of said member, properly made out on the blanks furnished for the purpose by officers, the Union shall pay, at their bank of deposit in Huntsville, a sum to be ascertained as follows : No member shall be entitled to any benefit whatever, who marries in less time than three months from the date of his certificate. Every member who shall have been in good standing as a member, for at least three months prior to his marriage, shall be entitled to forty dollars ($40) per month upon each one thousand dollars named in his certificate, for each whole month of his membership ; provided that the sum paid on this certificate shall never exceed three thousand ($3,000), or so much thereof as shall be realized from one marriage assessment on all the members of this class. In witness whereof."

The complaint contained the common money counts, each claiming $360, and two special counts on the contract above set out. One of the special counts set out the contract at length, and the other the substance of its provisions ; each claimed the sum of $360 as due by its provisions, alleging the regular payment of dues and assessments against said Vanderventer, his marriage on the 14th November, 1882, that due proof of his marriage was furnished to the defendant, and payment of the money was demanded and refused ; and each further alleged that the plaintiff was the beneficial holder and owner of the contract, or policy, and was entitled to the money due by its terms. The defendant demurred to each of the special counts, specially assigning as grounds of demurrer, that the contract declared on was contrary to public policy and void,

[White v. Equitable Nuptial Benefit Union.]

because it was a marriage-brokage contract, and because it was in restraint of marriage, and because it was in the nature of a gambling contract. The court sustained the demurrers, and the cause was tried on issue joined on the common counts, " with leave to the defendant to give in evidence any matter which, if specially pleaded, would be a good plea in bar."

On the trial, as appears from the bill of exceptions, the plaintiff testified as a witness for himself, and stated that he procured from the defendant corporation the said policy, or special contract, which was produced, and read to the jury without objection ; that he paid to said defendant, when said policy was delivered to him, the sum of $14.20, as therein specified, and afterwards paid other dues and assessments, as evidenced by receipts which he produced, and which were read in evidence without objection. " He further testified, also, that shortly before the last payment made by him, which was on the 13th November, 1882, he had an interview with said O. R. Hundley, who then stated to him that said extra assessment was made in order to have all the policy-holders paid in full their demands which had accrued ; that witness need feel no hesitancy in paying it, as he assured him (witness) that he would receive his money in full ; that there was then on hand in bank, in his custody, and under his control, ample funds to pay witness ; that he had $220, which witness' claim was then worth, ready to pay over to him ; that he would insure witness against any loss in the premises, and that he would certainly be repaid the amount which he had paid to said company." As to the substance of this conversation with Hundley, the plaintiff's testimony was corroborated by John S. Reed, who was present at the time.

"Said plaintiff, on his cross-examination as a witness, was asked, if it was not his understanding, when he took out said policy, that it was a speculation, or gambling transaction ; and he answered, that it was a speculation, but not a ' brace game ' —a speculation in marriage futures; that he did not at the time understand it as a gambling investment, but now it seems that it was ; that he belonged, then and now, to other endowment associations conducted upon the scheme of assessments, and did not regard this as less meritorious, because its risk was marriage, than other insurance companies whose risk was death ; that he had been informed, when he took out said policy, that said Vanderventer was to be married on the 14th November, 1882, and he agreed with said Vanderventer that he (V.) should have one-third of the proceeds of said policy when received, after deducting expenses ; that he was not related to said Vanderventer, by either blood or marriage, and had no business relations with him, either as partner or otherwise ; that said Van-

derventer was married on the 14th November, 1882, and he immediately made out the requisite proofs, furnished them to the defendant, and demanded payment after waiting ten days; and that payment was refused, on the alleged ground, that the defendants were not able to pay."

In the course of his cross-examination, plaintiff identified and proved the application for the policy in favor of Vanderventer, which, after stating his name, age, residence and occupation, gave the name of the plaintiff as the person to whom notice should be sent, and to whom the money should be paid in the event of marriage; and this was read in evidence without objection. It was admitted that said Hundley, McNeely and Erskine, named as defendants in the attachment, held the offices of president, secretary and treasurer of the corporation, and were the successors in office of the persons who signed the policy; and that they had control of its funds, and the general management of its affairs, at the time of the conversation with Hundley, and when payment of the policy was demanded. The plaintiff then offered in evidence the charter of said defendant corporation, or articles of incorporation, which were acknowledged by the persons named as corporators, before the probate judge of Madison, on the 24th June, 1882, and were in these words: "We, the undersigned," naming them, "hereby declare that, in accordance with the statute in such cases made and provided, we hereby organize and constitute a corporation, which shall be known as the *Equitable Nuptial Benefit Union.* The object of the association is to unite acceptable young people in such a way as to endow each with a sum of money, not to exceed six thousand dollars, to be paid at marriage or endowment, according to the regulations adopted. The association shall be under the management of a board of directors elected by these incorporators. It shall be the duty of these directors to elect officers every two years, according to a constitution and by-laws adopted by them, and perform such other duties as are therein prescribed. The officers shall be a president, vice-president, secretary, treasurer, and manager. The association shall have power to make and use a corporate seal. No failure of the board of directors to elect officers, according to the constitution, shall work any forfeiture of our charter." "The defendants objected to the admission of said charter as evidence, because the same was a nullity, contrary to law, conferring no authority or power, and because against public policy." The court sustained the objection, and excluded the charter as evidence; and the plaintiff excepted.

This being all the evidence, the court charged the jury, *ex mero motu,* and also on the written request of the defendants,

[White v. Equitable Nuptial Benefit Union.]

" that they must find a verdict for the defendants, if they believed the evidence ;" to which charge plaintiff duly excepted.

The rulings of the court on the pleadings and evidence, and the charge to the jury, are now assigned as error.

Humes, Gordon & Sheffey, for appellant.—In determining the validity of the contract, as assailed on demurrer, or as shown by the evidence, the court will inquire into the whole transaction from its origin, and will not be embarrassed by any particular expressions used in the writing.—*Robertson v. Robinson*, 65 Ala. 610. The avowed object and purpose of the association, as declared in its charter, is a laudable one ; and while operating a temporary postponement of marriage, from prudential considerations, manifestly tends to promote and encourage marriages, by providing an endowment fund. Conditions in partial restraint of marriage, founded on prudential considerations, and not in themselves unreasonable, are not invalid. Story's Equity, §§ 280, 283 ; *Coppage v. Alexander's Heirs*, 38 Amer. Dec. 157, *Note ; Commonwealth v. Stauffer*, 51 Amer. Dec. 489 ; *Hogan v. Curtin*, 42 Amer. Rep. 244 ; *Collier v. Slaughter*, 20 Ala. 263. The contract has none of the elements of a marriage-brokage contract, and it is no more in the nature of a gambling contract than the policies issued by other lawful insurance companies, whose risk is death instead of marriage. If it be a gambling contract, then the plaintiff was entitled, at least, to recover back the money which he had paid.—Code, § 2131 ; *Jacques v. Golightly*, 2 Wm. Bla. 1073 ; *Mount & Wardell v. Waite*, 7 John. 433. . The suit is not against the corporation alone, but certain stockholders are joined as defendants, who are made liable in proportion to their stock, or as partners, if the association was not lawfully organized. Code, §§ 1959–61. An express and direct promise is proved against Hundley, on the faith of which the last payment was made to him ; and a recovery may be had under the common counts.—2 Greenl. Ev. § 109, note ; *Walker v. Kremer*, 5 Rep. 389 ; *Lea v. Cassen*, 61 Ala. 312. If there be anything illegal or immoral in the transaction, the mischief has already been perpetrated, and the defendants will not be allowed to take advantage of their own wrong.—*Hulman v. Johnson*, Cowp. 343 ; *Faikey v. Reynous*, 4 Burr. 2069 ; *Gilliam v. Brown*, 43 Miss. 642 ; *DeLeon v. Trevino*, 49 Texas, 88 ; *Brooks v. Martin*, 2 Wall. 70 ; *Planters' Bank v. Union Bank*, 16 Wall. 483 ; *Owen v. Davis*, 1 Bailey, 315.

Walker & Walker, Jno. D. Brandon, and L. Cooper, contra.—(1.) The contract is in the nature of a marriage-brokage contract, and is void on that account.—Add. Contr. 102,

17

2d Amer. ed.; *Crawford v. Russell*, 62 Barb. 92; *Boynton v. Hubbard*, 7 Mass. 112; Story's Equity, § 261. (2.) It is against public policy and void, because it is in restraint of marriage.—2 Parsons on Contracts, 73; Add. Contr. 102; Chitty on Contracts, 680; *Sterling v. Sinnickson*, 2 South. N. J. 871; *Hartley v. Rice*, 10 East, 22; *Lowe v. Peers*, 4 Burr. 2225; *Baker v. White*, 2 Vern. 215; *Vaughan v. Lovejoy*, 34 Ala. 437. (3.) Under the evidence, if not on its face, it is in the nature of a gambling contract, and falls within the principle which governs wager policies of insurance. —2 Parsons on Contracts, 477–81, 6th ed.; *Chalfant v. Payton*, 91 Ind. 202. (4.) The contract being illegal and void, no recovery can be had under the common counts.—*Armstrong v. Toler*, 11 Wheaton, 258; *Leavitt v. Blatchford*, 5 Barb. 21; *Aubert v. Maze*, 2 Bos. & P. 371; *Lea v. Cassen*, 61 Ala. 312; *Scheible v. Bacho*, 41 Ala. 423; 1 Wait's Ac. & D. 386; Broom's Maxims, 350; *Selter v. Alvey*, 15 Kansas, 157. (5.) The policy was forfeited by its express terms, Vanderventer having married on the 14th November, one day before the expiration of three months from the date of the policy.—Code, ˅§ 11; *Dickson v. Frisbie*, 52 Ala. 165. (6.) No recovery can be had on account of any supposed liability of Hundley *et al.*, either as corporators or as partners, because the action is not founded on the statute. *Blackburn v. Baker*, 7 Porter, 284; 6 Cowen, 290; 1 Chitty's Pl. 106, 143; 2 East, 333; 3 Wendell, 494; 1 Atk. 126; *Harris v. Brooks*, 56 Ala. 388.

CLOPTON, J.—The special counts of the complaint declare on a contract, called a "marriage insurance policy," issued by the "Equitable Nuptial Benefit Union," which is averred to be a corporation, duly incorporated under the laws of this State. The question of the validity of the contract was made by demurrer to the special counts; the causes assigned being, that it is in the nature of a marriage-brokage contract, is in restraint of marriage, and is in the nature of a gambling contract.

A marriage-brokage contract is an agreement for the payment of money, or other compensation, for the procurement of a marriage. Although they may not be a fraud on either party, such contracts are held to be void, and a public mischief, forasmuch as they are calculated to bring to pass mistaken and unhappy marriages, to countervail parental influence in the training and education of children, and to tempt the exercise of an undue and pernicious influence, for selfish gain, in respect to the most sacred of human relations. An essential element in such contract is the procurement of a marriage, oftentimes without regard to the wishes of friends or parents, or to the

happiness of the parties most deeply interested. There is no such element in the contract sued on ; nor is there anything in its nature that contemplates compensation for the negotiation or procurement of any particular marriage. By the contract, it is agreed to pay an amount of money upon the contingency of marriage, but leaves the party in the exercise of entire freedom as to the person with whom he may propose to contract marriage. While, in view of the conclusions at which we have arrived, it is unnecessary to decide this question, we have said this much, it being presented by the record, to exclude any inference, that in our opinion the contract is obnoxious to this objection.

Without extending this opinion by an unnecessary attempt to consider the different and varied applications of the rules determining the illegality of contracts, and of conditions annexed to gifts or testamentary dispositions in restraint of marriage, we shall refer to those rules that have been generally accepted and recognized. Subject to modifications and limitations by the application of other special rules, dependent upon the facts, whether the condition be precedent or subsequent, or whether there is a gift over, or whether the property be real or personal, all conditions in deeds or wills, and all contracts, executory or executed, that create a general prohibition of marriage. are contrary to public policy, and to " the common weal and good order of society." The rule rests upon the proposition, that the institution of marriage is the fundamental support of national and social life, and the promoter of individual and public morality and virtue; and that to secure well-assorted marriages, there must exist the utmost freedom of choice. Neither is it necessary there shall be positive prohibition. If the condition is of such nature and rigidity in its requirements as to operate as a probable prohibition, it is void.

On the other hand, conditions in conveyances, or annexed to legacies and devises, in partial restraint of marriage, in respect to time, or place, or person, if reasonable in themselves, and do not materially and practically create an undue restraint upon the freedom of choice, are not void. Says Judge Story : " But the same principles of public policy which annul such conditions, when they tend to a general restraint of marriage, .will confirm and support them, when they merely preserve such reasonable and prudent regulations and sureties, as tend to protect the individual from those melancholy consequences, to which an over-hasty, rash, or precipitate match would probably lead."—1 Story Eq. Jur. § 281.

The want of harmony in the adjudged cases does not arise from any ambiguity in the rule itself, but from its comprehensive terms, inasmuch as the application of the rule to each

particular case is submitted to the sound discretion and judg-
ment of the court. The courts apply it according to their
estimation of the relative necessity and importance of preserving
the largest liberty in the formation of marital alliances, on the
one hand, and on the other, of upholding the prerogative of
the dispenser of bounty to dictate the terms, upon which its
enjoyment shall commence or continue, and of the right of
persons competent to contract to fix the terms of their agree-
ment so far as may be consistent with the public weal.—2 Lead.
Cas. in Eq. 420; *Maddox v. Maddox*, 11 Grat. 804; *Morley
v. Rennoldson*, 2 Hare, 571; *Williams v. Williams*, 13 Mo.
211; 2 Com. Eq. Jur. § 933; *Coppage v. Alexander*, 38 Am.
Dec. 156, (note). Under the operation of this rule, conditions
restraining marriage, without consent of parents, guardians, or
executors, or under twenty-one, or other reasonable age, or
with particular persons, are held to be valid; and conditions
not to marry a man of a particular profession, or that lives in
a named town or country, or who is not seized of an estate in
fee, are held to be general and void.—*Collier v. Slaughter*, 20
Ala. 263; *Stackpole v. Beaumont*, 3 Ves. 88; *Younge v.
Furse*, 8 D., M. & G. 756; *Scott v. Tyler*, 2 Bro. C. C. 488.

It is true, these instances of the application of the rule are
in cases of conditions annexed to gifts, devises, or legacies;
but illustrate that the condition will be sustained, when it is
the exercise of due and reasonable precaution against rash and
imprudent marriages. But, if it is an evasion of the law, or a
cover to restrain marriage generally, or is *in terrorem*, the con-
dition will be declared void. The present is the case of a con-
tract, and these illustrations are helpful only to the extent that
contracts in restraint of marriage are dependent upon the same
principles.

The charter of "the Equitable Nuptial Benefit Union"
declares, "The object of the association is to unite acceptable
young people in such a way as to endow each with a sum of
money, not to exceed six thousand dollars, to be paid at mar-
riage or endowment, according to the regulations adopted."
It proposed to accomplish this ostensibly laudable object, by
the issuance of certificates of membership. The one issued in
this case contains, among others, the following provisions:
"No member will be entitled to any benefit whatever, who
marries in less time than three months from the date of his
certificate. Every member, who shall have been in good
standing as a member for at least three months prior to his
marriage, shall be entitled to forty dollars per month, upon
each one thousand dollars named in his certificate, for each
whole month of his membership; *provided* that the sum shall
never exceed three thousand dollars, or so much thereof as

[White v. Equitable Nuptial Benefit Union.]

shall be realized from one marriage assessment of all the members of this class."

The restraint of marriage is partial. The counsel for plaintiff insist, that the restraint is reasonable, not forbidding marriage, but postponing it with the consent of the applicant for membership, to a period when it can presumably be made to greater advantage ; and therefore should be held valid, by analogy to similar provisions in gifts, or testamentary dispositions. No circumstances are proved, to show the reasonableness of the restraint. This must be ascertained from the certificate of membership, without the aid of extrinsic and surrounding facts and circumstances. Looking at the certificate, we are forced to the conclusion, that the restraint of marriage for three months is not for the benefit or advantage of the applicant, but to enable the association to realize a benefit fund, and to keep the applicant in a condition to contribute thereto, by the payment of dues and assessments.

In *Hartley v. Rice*, 10 East, 22, Lord Ellenborough, C. J., says : " On the face of the contract, its immediate tendency is, as far as it goes, to discourage marriage ; and we have no scales to weigh the degree of effect it would have on the human mind. It is said, however, that the restraint is not to operate for an indefinite period, but only for six years, and that there might be reasonable grounds to restrain the party for that period. But no circumstances are stated to us to show that the restraint was reasonable ; and the distinct and immediate tendency of the restraint stamps it as an illegal ingredient of the contract." And in *Sterling v. Sinnickson*, 2 South. 756, where the action was on a sealed bill to pay one thousand dollars, provided the obligee was not lawfully married in six months, Kirkpatrick, C. J., after stating the general principle, that all obligations to restrain marriage generally are void, says : "And I find no case, but in that of legacies (with one exception of a gift), that gives validity to an instrument, when made in contradiction to the principle first mentioned. And the principle of time, place, and person, appears to apply to legacies only, unless for a *good consideration.*"

It is not stated that there existed any relation between the applicant and the plaintiff, or the association, that would or could have moved either the plaintiff or the association to impose the restraint from prudential motives in favor of the applicant. A person having an interest, arising from relationship or close friendship, may, by conditions of partial restraint in gifts or legacies, guard and protect inexperienced youth against rash and improvident marriages ; and the husband may restrain his widow, in the interests of his children ; but, as is

added in some of the cases, "this could not be done by a stranger."

In *Chalfant v. Payton*, 91 Ind. 202, a certificate of membership, issued by the "Immediate Marriage Benefit Association," was held to be contrary to public policy, and illegal,—the contract being to pay a sum of money, on condition that the member does not marry within two years, and on marriage thereafter to pay a certain sum per day during the time he shall remain unmarried. It may be said, that the time of restraint by the contract sued on is for a much shorter period. By what rule, in the absence of special facts and circumstances, can the reasonableness of the time of restraint be measured? By what scales, can the degree of its effect upon the mind of the applicant be weighed? When a parent restrains the marriage of a child, or a friend prohibits it, without the consent of parents or guardian, until an age at which the child is competent to contract without such consent, the restraint does not violate, but is in furtherance of the policy of the law. But, when a stranger, without any interest or motive, except for selfish gain, enters into a contract, restraining the marriage of another for a definite period of time, the contract, *pro tanto*, violates public policy.

If there were no provision, other than the restraint for three months, a doubt as to its illegality might reasonably be entertained; but the restraint for three months is not the full scope of the contract. To obtain a clear comprehension of its nature and tendency, another provision must be observed. The certificate not only makes the payment of the money conditioned on not marrying in less than three months, but provides that, upon marriage after the expiration of three months, the member shall be entitled to receive forty dollars, on each one thousand dollars named in the certificate, for each whole month of his membership; that is, during the time he remains single. Thus, the contract contains an inducement to postpone marriage indefinitely, although the member contemplates its consummation at some future uncertain time; for the longer the marriage is postponed, the larger is the sum to be paid. The amount which the member will be entitled to receive is conditioned on the length of time marriage is deferred. This inducement, in connection with the restraint for three months, may have the effect to operate an indefinite postponement; and, as there is no limit, within which the member shall marry, it may operate to occasion a general restraint.

Insurance, being an indemnity against loss or risk, is not intended for the benefit of persons having no concern in the subject-matter, nor any interest in the event. In *Helmetag v. Miller*, at the present term, it is said: "No principle of the

[White v. Equitable Nuptial Benefit Union.]

law of life-insurance is, at this day, better settled, than the doctrine, that a policy taken out by one person upon the life of another, in which he has no insurable interest, is illegal and void, as repugnant to public policy. . . Such contracts are aptly termed 'wager policies,' and are entitled to no higher dignity, in the eye of the law, than gambling speculations, or idle bets on the probable duration of human life." The same principle, that where there is no insurable interest, the policy is invalid, pervades the law of all kinds of insurance. At an early period, marine-insurance policies, without interest, were considered innocent wagers; but now such policies are held to be void, as contravening the cardinal object of insurance—indemnity against loss—and as being dangerous and demoralizing, by tempting the insured, having nothing to lose but everything to gain, to bring to pass the event upon the happening of which the insurance becomes payable.—May on Ins. § 75. Although the certificate is not properly a policy of insurance, an application of these principles will enable us to arrive at a satisfactory conclusion as to the character of the contract, when considered in the light of the attendant circumstances.

Vanderventer, at the time of making the application, in response to questions propounded, named the plaintiff as the person to whom the benefit should be paid, and to whom notices of dues and assessments should be sent for payment. There was also an agreement, that plaintiff would pay all dues and assessments, which he did, and Vanderventer should receive one-third of the proceeds of the certificate when collected, after deducting expenses. It is manifest that, while Vanderventer made the application personally, and is the nominal member, he was the mere instrument to procure the certificate, and that the contract was made really for the benefit of the plaintiff. It must be regarded as, virtually and substantially, a contract with him.

The plaintiff, not being related to Vanderventer by affinity or consanguinity, and having no business relations with him whatever, had no personal interest in his marital relations. It was speculation on the part of the plaintiff, without interest, upon the probability of Vanderventer's marriage,—as the plaintiff tersely characterized it, in his testimony, "a speculation in marriage futures." Such contract is disfavored and disapproved by the law, in the interests of the common weal, of good order and general public policy. It subjects the plaintiff to a temptation, for pecuniary advantages, to promote and procure the marriage of Vanderventer, at some future period, by which the plaintiff has nothing to lose. Upon analogous principles in cases of insurance, such contract is, in its nature, a wager contract.—*Chalfant v. Payton, supra.*

[Peterson v. Blanton.]

It is further contended, that if the contract is illegal, then the plaintiff is entitled to recover, under the common counts, the sum of the dues and assessments paid by him; especially from Hundley, by virtue of a special promise. The action was commenced originally by process of attachment against three named individuals, among whom is Hundley, who are described in the affidavit preceding the issue of the writ, as "constituting the Equitable Nuptial Benefit Union, organized under the laws of Alabama." In the margin of the complaint, subsequently filed, the parties are stated in the same manner; but the body of the complaint reads, "The plaintiff, Alexander L. White, claims of the defendant, the Equitable Nuptial Benefit Union, a corporation composed of the defendants, Oscar R. Hundley, William A. McNeely, and Alexander Erskine, Jr., and duly incorporated under the laws of Alabama." The individuals, named in the margin as defendants, are mentioned in the body of the complaint, which controls the marginal statement, merely as composing the alleged corporation,—*descriptio personæ.* Filing such complaint, and going to trial thereon, operated a discontinuance of the suit against them as individuals, and converted it into an action against the corporation as the sole defendant.

The court will not lend its aid to either party, for the enforcement of an illegal *executory* contract, in an action to recover for its non-execution; and when a contract, contravening good morals or public policy, has been fully and voluntarily *executed,* and the parties are *in pari delicto,* the court will not interfere with the acquired rights of either at the instance of the other.—*Hill v. Freeman,* 73 Ala. 200. The claim of the plaintiff to recover the dues and assessments paid falls within this rule.

Affirmed.