SALLY DESNOYER *vs.* MARY JORDAN and others.

October 28, 1880.

Antenuptial Contracts.—Parties in contemplation of marriage may by contract, equitable and fairly made, fix the rights which each shall have in the property of the other during life, or which the survivor shall have in the property of the other after his or her decease, and to exclude the operation of the law in respect of fixing such rights. Gen. St. 1866, *c.* 48, §§ 14-17, did not limit such contracts to merely barring dower.

Same—Not Impaired by Subsequent Legislation.—A subsequent statute cannot impair the obligation of an antenuptial contract, nor affect the rights of the parties as stipulated by it.

Appeal by plaintiff from a judgment of the district court for Ramsey county, *Brill,* J., presiding, affirming a judgment of the probate court.

*Oscar Stephenson,* for appellant.

*R. B. Galusha* and *George B. Young,* for respondent.

GILFILLAN, C. J. The appellant and Stephen Desnoyer were married in this state May 7, 1873, and he died December 3, 1877, she surviving him. His estate being in course of administration, she applied to the probate court in Ramsey county, in which the administration was pending, asking that one-third of the real and personal property might be set off to her as the widow, and as her portion of the estate, pursuant to the statute. The application was opposed by the heirs, and the probate court denied it. She appealed to the district court, and that court found as facts that "previous to their marriage, and just prior thereto, and in contemplation thereof, said parties (appellant and Stephen Desnoyer) entered into a mutual agreement in writing, executed by each of them under seal, and acknowledged before a notary public, and witnessed by two witnesses, whereby, in terms, Stephen Desnoyer, in contemplation of said marriage, and in consideration thereof, and in consideration of the services theretofore rendered to him by said Sally Johnson (appellant) as housekeeper, did grant and convey to said Sally Johnson, after his death, and for the term of her natural life, the real estate and appurtenances situate in the county of Ramsey, and state of Minnesota, described as follows, (description,) and did give and grant to her after his death, and during her life, the sum of $500 per year out of his estate, to be paid to her in equal semi-annual instalments, and did make the same a charge upon all his estate, and did also give to her absolutely at his death a horse, a buggy, a harness, a sleigh and a cow. In consideration thereof, said Sally Johnson did, by said agreement, in terms release said Desnoyer for past services, and did release all dower and right of dower in his lands, and all her interest or claim of any kind in and to the estate and property of said Desnoyer, which might arise by reason of said marriage; except as to the provision made for her in said agreement." The court also found the agreement was not cancelled or abrogated. The agreement was not recorded. The land described in it was owned and occupied as a resi-

dence by Desnoyer at the time of making the agreement and of his death, and was parcel of a tract owned by him of about 300 acres. The contract was not produced on the trial, but the evidence as to its execution and contents was fully sufficient to sustain the finding of the court below. Indeed, it is difficult to see how the court could have found otherwise. And there is little, if any, evidence tending to show that it was afterwards cancelled.

The question of appellant's homestead right (if it were to be conceded that it is not disposed of by this antenuptial agreement) cannot be considered; for, in her petition on which this proceeding is based, she expressly disclaims any intention to claim such right, and the evidence is not such as to identify any homestead beyond that described in the agreement.

The agreement contemplated that, except as provided in the agreement itself, the appellant should be excluded from any right or interest in Desnoyer's estate that might otherwise accrue to her by reason of the marriage about to take place between the parties. In the absence of a valid agreement between the parties, the law fixes the rights which either the husband or the wife shall have in the property of the other, both during life and after the death of either. But it has always been permitted to the parties in contemplation of marriage to fix those rights by agreement, equitable and fairly made between them, and to exclude the operation of the law in respect to fixing such rights; so that, so far as the agreement extends, it, and not the law, furnishes the measure of such rights. That such antenuptial agreements might be made was recognized in the statute in force when this agreement was made. Gen. St. (1866) *c.* 69, §§ 1, 4; *c.* 48, §§ 14–17. The latter of these statutes did not limit (as appellant argues) antenuptial contracts to barring dower alone. It only prescribed what sort of provision for the wife, in any such contract, should have the effect to bar dower; that it must be a jointure of a freehold estate in lands for her life,

at least, to take effect in possession or profit immediately on the death of the husband, or a pecuniary provision for her benefit in lieu of dower; such jointure or pecuniary provision to be assented to by her before the marriage. But it did not disable the parties to make an antenuptial contract which should, in any other respect, fix the rights of the parties in the property of each other.

The parties having made their contract, and it being one which they were competent to make, and there being nothing to impeach its fairness or equitable character, and it clearly providing that the wife shall have no right or interest in the estate of the husband other than that provided in the contract, this would seem to dispose of the case. But it is claimed that subsequent acts of the legislature confer on the wife, surviving her husband, rights in his estate which obtain, notwithstanding the antenuptial contract stipulates she shall have none other than it provides for. At the time this contract was made, a widow was entitled to dower in the real estate of her deceased husband, (unless barred, as in the statute provided,) and in case of intestacy to certain allowances out of, and to the same distributive share of, his personal estate as a child of the intestate would have. Afterwards dower was abolished, and in 1876 the legislature passed an act (Laws 1876, c. 37; Gen. St. 1878, c. 46, §§ 2, 3,) which entitles the surviving husband or wife to a life estate in the homestead of the deceased, free from all claims on account of debts of deceased, and also absolutely to one-third of the real estate of which the deceased was seized during coverture, subject in its just proportion with the other real estate to such debts of deceased as are not paid out of the personal estate.

Unless the operation of this statute is prevented by the antenuptial contract, the appellant is entitled, as to the real estate at any rate, to what she claims. But, inasmuch as the contract excludes all such rights as the statute assumes to give, the latter can have no effect without overriding the

the former; that is, without impairing its obligation. Now, though the contract of marriage and its incidents, including rights of property depending on it, while such rights of property remain inchoate and are mere expectancies, may be within the power of the legislature to vary or affect by subsequent legislation, it is not so with an antenuptial contract. Such a contract is founded on a high consideration. Rights under it are contract rights as much as any can be, not merely resting upon or incident to the relation of husband and wife. They are independent of such incidents. Such a contract is under the constitutional protection as much as any contract. So, even if the legislature intended, by the statute last cited, or by that in 1876, regulating distribution of personal estate of a deceased person, (Laws 1876, *c.* 42; Gen. St. 1878, *c.* 51, § 1,) to give rights contrary to the provisions of antenuptial contracts then existing, the statute would, to that extent, by reason of the constitutional inhibition against laws impairing the obligation of contracts, be inoperative; but we do not think the legislature intended to affect such contracts in any way.

Judgment affirmed.