CARRIE M. HOSFORD *vs.* FEAR B. ROWE and others.

July 15, 1889.

**Antenuptial Contract held Valid.**—A man having a large estate, who had been once married, and who had six children living, entered into an antenuptial contract prior to a second marriage. He was over 70 years of age, and the proposed wife 39 years of age. This contract provided that the wife should, upon his death, have absolutely one-seventh of all his estate in lieu of the one-third interest to which by law she would be entitled, and also that in case the husband should survive the wife, the same interest in his estate should, upon his death, descend to her heirs and personal representatives. The contract is *held* to have been valid.

**Same—Evidence—Declaration against Interest.**—It was to be presumed from the disparity of ages that the husband would die first, and, it being for his interest to retain the larger control of his property allowed by the contract, a declaration by him that it had been annulled would be admissible after his death as evidence that such was the fact, being a declaration against interest.

**New Trial — Newly-discovered Evidence.**—Newly-discovered evidence of this character *held* to justify the trial court in granting a new trial upon that issue.

Appeal by defendants from an order of the district court for Hennepin county, *Young,* J., presiding, granting a new trial for newly-discovered evidence.

*Russell, Calhoun & Reed, D. B. Snow,* and *Duncan McDougall,* for appellants.

*M. B. Koon* and *Benton, Plumley & Healy,* for respondent.

DICKINSON, J. The respondent, Carrie M. Hosford, is the widow of the deceased, John H. Hosford. Before her marriage to him she was a widow, and bore the name of Thompson. The appellants are his daughters by a former marriage. By an order of the probate court for the distribution of the estate, the respondent, the widow, was allowed to take in accordance with the statute, as though her rights were not affected by the antenuptial contract hereafter to be referred to. The daughters of the deceased appealed to the district court. Upon trial of the cause in the latter court a jury was called, and three

questions were submitted to them for decision, viz.: "*First,* whether about November 2, 1885, the antenuptial contract was executed;" to which the jury, by direction of the court, answered, "Yes;" "*second,* whether the deceased, subsequent to the marriage, and about September 13, 1886, destroyed that contract with the knowledge and consent of his wife;" to which the jury answered, "No;" and, "*third,* whether at or about the time last named he signed duplicate instruments presented in the case, and known as Exhibits C and D, purporting to annul the antenuptial contract;" to which the jury answered, "No." The widow, who claimed the more favorable provision made by law, rather than that made by the terms of the antenuptial agreement, moved for a new trial, upon the ground, among others, of newly-discovered evidence. The court granted a new trial upon that ground, and from that order this appeal was taken. We are called upon to consider the alleged newly-discovered evidence, as it may bear upon the second and third of the questions presented to the jury.

At the time of the execution of the antenuptial agreement,—November 2, 1885,—Mr. Hosford was over 70, and Mrs. Thompson 39 years of age. Mr. Hosford had six children, all of adult age. He had acquired and was possessed of a large estate. The antenuptial agreement contained mutual promises of marriage within a specified time, and in consideration thereof the further agreements expressed in the instrument were declared to be made. The declared purpose of the agreement, as expressed in its terms, was to define the interest which the wife should acquire by virtue of this marriage in the estate of the husband, in lieu of provisions made by the laws of the state of Minnesota or of any other state. Mrs. Thompson expressly waived all right and claim which, as the wife of Mr. Hosford, she might become entitled to by law. Mr. Hosford agreed that upon his decease she should receive as an absolute estate one-seventh of all real and personal property of which he should die seized or possessed, subject, in equal proportion with the remainder of his estate, to the payment of debts. It was further expressed that, if Mr. Hosford should survive his wife, the same proportion of his estate (one-seventh) should, upon his death, descend to and become vested in her heirs, executors, administrators, and assigns. This agree-

ment was reduced to writing, and signed in duplicate by both parties, and, as the evidence conclusively showed, was delivered as a completed contract. Both papers were intrusted to the keeping of Mr. Hosford. The marriage was solemnized November 8, 1885, within the time specified in the agreement. Mr. Hosford died a little more than a year after that, in November, 1886. The antenuptial agreement was not found after his death, neither of the duplicates having since been discovered. Mrs. Hosford testified that on the 13th of September, 1886, Mr. Hosford procured those papers from the place where they had been deposited, and in her presence —no one else being present—burned them. The declarations accompanying this act, and the conversations of the deceased with Mrs. Hosford upon the subject, she was not a competent witness to prove. She testified also that at the same time she wrote at his dictation duplicate instruments, which they both signed, each retaining one. These were presented in evidence, and are the Exhibits C and D above referred to. These instruments declared that the antenuptial contract had been that day destroyed by mutual consent of the parties, and that Mrs. Hosford was to have her lawful rights in the estate of her husband as if that contract had never existed. There was a good deal of evidence in the case tending to show that after the death of her husband Mrs. Hosford had made declarations, and pursued a course of conduct, inconsistent with her testimony; and that the name of Mr. Hosford, subscribed to Exhibits C and D, was not in his handwriting. These matters were strenuously contested, the greater part of the conflicting testimony as to Mrs. Hosford's declarations having been given by persons interested in the result of the action.

The newly-discovered evidence, which led the court to grant a new trial, is shown in the affidavit of one Abraham L. Jones, stating a conversation with Mr. Hosford between the 1st and 15th of October, 1886,—a short time after the alleged destruction of the antenuptial contract,—in which Mr. Hosford said: "I burned the papers we had written before our marriage. I propose to let my wife have the biggest part of my money." Proof of such a declaration would not be subject to the objections suggested by the appellants. It would be

provable as evidence of the destruction and annulling of the ante-nuptial contract, for the reason that such a declaration by him would be against his interest in a pecuniary or proprietary point of view, and is therefore within the familiar exception to the rule relating to secondary evidence. 1 Greenl. Ev. §§ 147–149. By force of the antenuptial agreement the husband's power to dispose of his estate was greater than it would be if that contract should be annulled. By that contract the interest which his widow could enjoy in his estate, upon his death, was limited to one-seventh part, as against the one-third which our law gives when unaffected by such an agreement. It was for his interest to preserve the larger power of disposition with respect to his property which the contract secured to him. He could still, of his own volition, bestow upon his wife while living, or by will upon his widow, a greater share of his estate than that specified in the agreement, and a will once made might be revoked or altered at his own election. He would be free, on the other hand, to make any other disposition he might desire of the six-sevenths of the estate. This right of election on his part would at once cease upon the can-cellation of that contract. Thereafter he could impose no restriction upon the larger statutory rights of his wife to share in his estate. As respected his interest in the property, it was not a matter of indif-ference whether the contract remained in force or not. Its annul-ment would diminish his power to control the disposition of his property; nor would it be in his own power to place himself again in his former advantageous position. These considerations distinguish this case from a class of decisions relied upon by the appellants, in respect to which it is to be observed that the declarations in question could not be said to be against the interest of the persons making them. Declarations by a person to show that he had executed a will, or that he had not executed a will, or that he had revoked his will, are examples of the cases referred to. These are not to be regarded, in general, as declarations against interest, for the acts to which the declarations relate, and the consequences of such acts, are wholly within the control of the person whose declaration is in question. It cannot be presumed that such acts are prejudicial to himself. If he has made a will, he can revoke it at pleasure, or alter it, or make

another. And so his declaration that he has made a will is not against his interest. If he has not executed a will, that is not to his prejudice. He can do so whenever he may deem it best. If he has revoked a will he can make another. Whether the declaration in question would be admissible in this case upon any other ground than that above specified, we do not decide.

The latter provision in the antenuptial agreement, to the effect that in the event of the husband surviving the wife, the heirs and next of kin of the latter should, upon his death, take the same interest in the property which the contract secured to her, does not qualify the conclusion that it was, in contemplation of law, against his interest to annul this agreement. Their ages were such that — no other fact appearing—it was probable that she would survive him, and hence that this last provision would never become operative. The law recognizes this probability based upon such a difference in ages, and it is not to be disregarded in considering whether the interest of Mr. Hosford was that the contract should remain in force or be annulled. The case as it then stood may be thus stated: If the contract should remain in force, the wife's inchoate interest in the estate, and the corresponding restriction upon the husband's power of disposition, would be confined to the one-seventh part. But this limitation of his power would be effectual, even though he should outlive her. On the other hand, if the contract were done away with, such charge and restriction would apply to one-third of the estate,—more than twice the former proportion,—if Mr. Hosford should die before his wife, as it was probable he would do. It so clearly appears from this that his interest was to preserve the contract in force, that, no other qualifying circumstances being shown, it should be assumed that the declaration in question was against interest, and therefore it would be competent evidence against the appellants.

The bearing and importance of such evidence, under the circumstances to which we have referred, are apparent. The respondent is not chargeable with negligence in not having discovered it until after the trial; and the court was justified in granting a new trial for this cause, in view of the importance of the case, the nature of the issue, and the character of the evidence previously attainable. We under-

stand from the language of the court in its order, to which the appellants refer, that the court considered that there was such a degree of probability that this evidence might affect the result that he thought it ought to be presented to the jury. We do not understand the court to have meant that it was not for him to consider whether or not the evidence might affect the result.

For the purposes of another trial we will say that, as the case was presented, the burden of proof was upon this respondent to show that the signature of the deceased to Exhibits C and D was genuine, and not upon these appellants to prove that it was not his signature.

The respondent claims that the antenuptial contract was invalid, especially because the last provision, to which we have before referred, would not have been enforceable, even if Mrs. Hosford had died before her husband. Antenuptial settlements in general are sustained and enforced when their provisions are fair and reasonable. The marriage is a sufficient consideration, and their validity as contracts does not depend upon express statutory authority. *Desnoyer* v. *Jordan*, 27 Minn. 295, (7 N. W. Rep. 140.) Nor are agreements invalid which, as in this case, extend the benefits of the settlement to others than the immediate contracting parties. 2 Kent, Comm. 172, 173; *Osgood* v. *Strode*, 2 P. Wms. 245, 255; *Pulvertoft* v. *Pulvertoft*, 18 Ves. 84.

Order affirmed.