T. E. W. V. APPLEBY v. Estates of C. D. W. APPLEBY and F. S. WILDER.[1]

March 28, 1907.

Nos. 15,006—(175).

**Contract in Restraint of Marriage.**

Contracts in restraint of marriage, or which tend to induce a separation of husband and wife, are, on broad grounds of public policy, utterly void.

**Antenuptial Contract.**

An antenuptial contract contained a provision by which, in consideration of the contemplated marriage and the release and relinquishment by the intended husband of all his rights and interests in and to the property and estate of the intended wife, she agreed to provide from her estate, after her death, an annual income to him of $10,000 so long as he should remain unmarried. This is *held* not a condition in restraint

[1] Reported in 111 N. W. 305.

of marriage, but one limiting the duration of the income, terminable at the voluntary election of the husband.

### Same—Construction.

An antenuptial contract provided for the income mentioned in the preceding paragraph if the parties were at the time of the death of the wife living and cohabiting together as husband and wife. The contract in this respect is construed, and *held* not to tend to induce a separation between husband and wife, and therefore valid.

### Same—Consideration.

The agreement to marry is a sufficient consideration to support an antenuptial contract disposing of and definitely fixing the property rights of the parties.

### Same.

Even though the original engagement of marriage be absolute, and entered into some months preceding the making and signing of the antenuptial contract, the agreement to marry remains a consideration for that contract, and sufficient to support it.

### Same.

Antenuptial contracts in anticipation of marriage, equitably and fairly made, exclude the operation of law in respect to the property rights of each, in so far as covered by the contract.

### Same—Validity.

The antenuptial contract involved in this case, cutting off the homestead right of appellant and his statutory one-third interest in his wife's property, is not prohibited by statute, and is valid.

### Same—Construction.

An antenuptial contract, fair and reasonable, respecting the property and property rights of the parties, fully performed by one of the parties after the marriage and before his or her death, will not be held void at the instance of the other party, merely because one of the provisions thereof might be so construed as to have justified the one performing in adopting a course of conduct before death that would render the contract inoperative and of no effect.

### Construction of Will.

The will involved in this case, being supplemental to that construed in the case of Watkins v. Bigelow, 93 Minn. 361, by which the "Amherst H. Wilder Charity" was created, construed, and *held* in all substantial respects similar to the will construed in that case, and not violative of the statute against uses and trusts.

**Will—Equitable Election.**

The will devised to appellant certain property, which constituted the homestead of the mother of the testatrix, if at the time of her death she was the owner of the same. Coupled therewith were bequests to her mother, which the mother accepted and received. It is *held* that, the devise being conditioned upon her ownership of the property, the rule of equitable election, laid down in Brown v. Brown, 42 Minn. 270, did not apply.

**Same—Lapsed Legacy.**

The provisions of the part of the will providing for an annual allowance of $5,000 for the care and maintenance of the property referred to in the tenth subdivision of this syllabus were intended by the testatrix for the purpose of maintaining the homestead in suitable condition for occupancy so long as it should be occupied rightfully by appellant; and inasmuch as the right to occupy the same never passed to appellant by the will, it not being the testatrix's property at the time of her death, the provisions for the maintenance thereof lapsed and became inoperative.

T. E. W. Villiers Appleby appealed from a final decree of distribution of the probate court of Ramsey county in the matter of the estates of Cornelia Day Wilder Appleby and Fannie S. Wilder to the district court for Ramsey county, where the judgment of the probate court was substantially affirmed. From an order of Hallam, J., before whom the appeal was tried, denying a motion for a new trial, an appeal was taken to the supreme court. Affirmed.

*Thomas D. O'Brien, A. E. Clarke,* and *Harris Richardson,* for appellants.

The antenuptial contract was void because it tended unreasonably to restrain appellant's second marriage in case of his wife's death, and was consequently contrary to public policy. It contained inducements to postpone appellant's marriage indefinitely. The longer he put off marrying, the more Dr. Appleby would receive. It amounted to a general restraint, because there is no limit within which he may marry. White v. Equitable, 76 Ala. 251; Hartley v. Rice, 10 East, 22; Chalfant v. Payton, 91 Ind. 202; Sterling v. Sinnickson, 5 N. J. L. 756, 871; Baker v. White, 2 Vern. 215; Key v. Bradshaw, 2 Vern. 102; Cook v. Richards, 10 Ves. Jr. 429; State v. Towle, 80 Me. 287; Wa-

ters v. Tazewell, 9 Md. 291; Moran v. Stewart, 173 Mo. 207; Clippinger v. Hepbaugh, 5 Watts & S. 315; Stanton v. Allen, 5 Denio, 434.

There are many provisions considered in will cases which are held to be void because in restraint of marriage. Kennedy v. Alexander, 21 App. Cas. D. C. 424; Hoopes v. Dundas, 10 Pa. St. 75; McIlvaine v. Gethen, 3 Whart. 575; Middleton v. Rice, 4 Pa. L. J. 228; Stilwell v. Knapper, 69 Ind. 558; Parsons v. Winslow, 6 Mass. 169; Williams v. Cowden, 13 Mo. 212; Binnerman v. Weaver, 8 Md. 517; Coon v. Bean, 69 Ind. 474; Maddox v. Maddox, 11 Gratt. 804; Otis v. Prince, 10 Gray, 581; Smythe v. Smythe, 90 Va. 638; Marples v. Bainbridge, 1 Madd. 590; Bellairs v. Bellairs, L. R. 18 Eq. 510; Scott v. Tyler, 2 Brown, Ch. Cas. 432; Garret v. Pritty, 2 Vern. 293; Morley v. Renoldson, L. R. 1 Ch. 449; Allen v. Jackson, L. R. 1 Ch. 399; Long v. Dennis, 4 Burr. 2052; Lloyd v. Lloyd, 2 Sim. (N. S.) 255; Randall v. Marble, 69 Me. 310.

The contract was also void on grounds of public policy, because under its provisions, if his wife chose not to live with him he would take nothing, and her estate would gain $10,000 a year. Cartwright v. Cartwright, 22 L. J. Ch. 841; H. v. W., 3 Kay & J. 382; Brown v. Peck, 1 Eden, 140; Randall v. Randall, 37 Mich. 563; Brun v. Brun, 64 Neb. 782; Boland v. O'Neil, 72 Conn. 217; Durant v. Titley, 7 Price, 577; St. John v. St. John, 11 Ves. Jr. 526; Westmeath v. Westmeath, 1 Jacob, 126; Neddo v. Neddo, 56 Kan. 507. Where a contract belongs to a class which is contrary to public policy it will be declared illegal, as the test is the evil tendency of the contract and not its actual result. Brown v. First National, 137 Ind. 655; Elkhart v. Crary, 98 Ind. 238; Atcheson v. Mallon, 43 N. Y. 147; Tool Co. v. Norris, 2 Wall. 45. Provisions in the contract being void as against public policy, the whole contract is void.

This antenuptial contract was entire, illegality in one part tainted the whole. Handy v. St. Paul Globe Pub. Co., 41 Minn. 188; Todd v. Bettingen, 98 Minn. 170; Houlton v. Dunn, 60 Minn. 26; More v. Bonnet, 40 Cal. 251; Crawford v. Wick, 18 Oh. St. 190; Filson v. Himes, 5 Pa. St. 452; Saratoga v. King, 44 N. Y. 87.

The contract was void for want of a consideration. Antenuptial contracts, as well as other contracts, must have a consideration. Generally, the marriage is said to be the consideration. But in some cases it is not. Moran v. Stewart, 173 Mo. 207.

An antenuptial contract cutting off the third right and the homestead right of a spouse is not authorized in this state, and is void. By the common law no provision made by a man before marriage in favor of his future wife could bar her dower. Michigan, Wisconsin and Minnesota passed statutes the effect of which was that her dower could be barred, provided the prospective wife was given something equally as good as her dower right. In re Pulling's Estate, 93 Mich. 274; Moran v. Stewart, supra; G. S. 1866, c. 48, § 14, c. 69, §§ 1, 4. The married woman's act of 1869 (Laws 1869, c. 56, § 6) provided that antenuptial contracts were not affected, but it did not repeal the provision of c. 48, § 14, barring dower. But by Laws 1875, c. 40, the right to dower was gone, and in place of it the surviving husband or widow was to have one third of the real estate free from any testamentary disposition to which assent had not been given in writing. This was re-enacted by Laws 1876, c. 37. It means that neither can be deprived of the third right, except by some writing made after they become husband and wife.

The policy of the law gave the third right to the wife, not only on her own account, but on account of the children. The provision was to enable her to care for the children. The state was interested in this as a matter of public policy. That policy demands that the law be so interpreted that men and women in contemplation of marriage, and before they know whether there will be children, cannot cut off rights which were originally given, and have always been maintained, for the benefit of children.

As Dr. Appleby did not consent after marriage to any disposition he still has his statutory third right. Desnoyer v. Jordan, 27 Minn. 295; Hosford v. Rowe, 41 Minn. 245.

When Mrs. Appleby made her will she broke the antenuptial contract by departing from its terms and thus released her husband.

*Frank B. Kellogg, C. A. Severance,* and *Robert E. Olds,* for respondents.

The antenuptial contract is valid. Jones v. Jones, 1 Q. B. Div. 279; Arthur v. Cole, 56 Md. 100; see also Mann v. Jackson (Me.) 16 L. R. A. 707; Summit v. Yount, 109 Ind. 506.

There is manifestly a wide distinction to be taken between provi-

sions, whether they be found in wills or contracts, which are designed to mark or limit the extent of the estate given, and those which are designed to cut short an estate of greater extent, or limit it upon the happening of a condition subsequent to the grant. In the one case the estate is conferred upon what is known as a conditional limitation, and in the other it is granted upon a condition subsequent. Examples of the former case are furnished by devises or grants to take effect or operate during a certain period of time, or until a certain event shall take place, or so long as a certain condition of affairs shall exist. In such instances the testator or grantor has himself undertaken to mark the limit beyond which the estate shall not go. He, being the source of title, has full power to designate that limit, and if he makes his intention clear, it is obvious that the limit so laid down by him cannot be transgressed under any circumstances. The grantee or devisee cannot be given more than the devisor or grantor has seen fit to confer. On the other hand, if an estate be given for life, or in fee, or for any period of time, with a proviso or condition that upon the happening of a subsequent event the estate shall sooner terminate, it is equally clear that by the use of such language the grantor has intended to confer, and has conferred, an estate for the full period designated, but that he has sought to impose a condition upon the grantee which may defeat and cut short that estate upon a certain contingency. Now in the case of the proviso or condition subsequent, the courts have been able to see their way to setting it aside where it was found to be illegal or void. The necessary effect of such a decision is to permit the estate to go on in the grantee unfettered by the void condition. This does not involve any enlargement of the estate granted, by judicial construction. The distinction we have endeavored to point out has been universally recognized. Godolphin, Civ. L. 383; Morley v. Renoldson, 2 Hare, 571; Allen v. Jackson, L. R. 19 Eq. Cas. 631; Bostick v. Blades, 59 Md. 231; Com. v. Stauffer, 10 Pa. St. 350; Knight v. Mahoney, 152 Mass. 523.

It is insisted the antenuptial agreement necessarily tended to a separation of the parties. Far from being an agreement made in contemplation of future separation, it was rather one inducing cohabitation as husband and wife, for under its terms the husband cannot secure the annuity at all unless they continue to live together. In re Hope

Johnstone (1904) L. R. 1 Ch. Div. 470; Duchess of Marlborough v. Duke of Marlborough, (1901) L. R. 1 Ch. Div. 165; Cartwright v. Cartwright, 3 De Gex, M. & G. 982; H. v. W., 3 Kay & J. 382; Bishop, M. & Div. § 1273, et seq. and 1281; Randall v. Randall, 37 Mich. 563; Boland v. O'Neil, 72 Conn. 217; Brun v. Brun, 64 Neb. 782; Born v. Horstmann, 80 Cal. 452.

The marriage alone was a sufficient consideration. Desnoyer v. Jordan, 27 Minn. 295, 30 Minn. 80, Hosford v. Rowe, 41 Minn. 245.

BROWN, J.

Cornelia Day Wilder Appleby died in January, 1903, leaving what purported to be her last will and testament. It was presented to the probate court of Ramsey county for allowance, was duly proved and allowed, and a final decree of distribution of her estate entered in accordance with its terms and provisions. Dr. T. E. W. Villiers Appleby, her surviving husband, appealed therefrom to the district court, where the decree of the probate court was in all substantial respects affirmed. He then appealed to this court from an order of that court denying his motion for a new trial.

Amherst H. Wilder, with his wife, Fannie S. Wilder, and daughter, Cornelia Day Wilder, an only child, resided for many years in the city of St. Paul, where in numerous business enterprises he accumulated what would constitute, outside of modern railroad financiering, a vast fortune, aggregating over $2,000,000. He determined in his lifetime to provide at his death from a large portion of his wealth a perpetual fund for the benefit of the worthy poor of St. Paul. To that end he created by his last will and testament the "Amherst H. Wilder Charity" and amply provided for carrying out his wishes in this respect. That his wife and daughter fully concurred and co-operated with him in his benevolent purposes is evidenced by the provisions contained in the last will of each. The will of Mr. Wilder, and that of his wife, Fannie S. Wilder, were before us in the case of Watkins v. Bigelow, 93 Minn. 210, 101 N. W. 497, where the will of Mrs. Wilder, supplementing that of her husband, was construed and upheld. The will of Mr. Wilder, and also that of his wife, made numerous minor provisions to various persons, provided fully for the daughter, and left a large portion of the residue of their estate to the charity thereby creat-

ed and provided for. Reference is here made to the opinion in the former case for a full statement of the facts relative to those wills and the charity thus established. In 1896 Miss Wilder and Dr. Appleby became engaged to be married to each other, pursuant to which they were married in May, 1897, and continued thereafter to live and co-habit together as husband and wife until the time of her death on January 20, 1903. Prior to their marriage, in May, 1896, they entered into an antenuptial contract, the material portions of which are as follows:

> Whereas, it is agreed by and between the parties hereto, Cornelia Day Wilder, also called herein party of the first part, and T. E. W. Villiers Appleby, also called herein party of the second part, each of St. Paul, Minnesota, each of full age, that a marriage is shortly to be had and solemnized between the parties hereto; and

> Whereas, said party of the first part now has in her own name and right, and there is also held for her in trust under the last will of her father, Amherst H. Wilder, late of said St. Paul, a large amount of property, real and personal, and she expects to have and acquire hereafter from time to time a large amount of property; and

> Whereas, under the last will of her father a large amount of property is held in trust for any child or children born to said Cornelia Day Wilder, her surviving, and the parties hereto desire by this antenuptial agreement to arrange, and do hereby arrange, as to all and every part of the present and future property of every kind and character of said Cornelia Day Wilder, and of any child or children born to said Cornelia Day Wilder, who may her survive, and then die without becoming of full age, issue of said intended marriage:

> Now, in consideration of the premises and in consideration of one dollar to said party of the second part paid by said party of the first part at the time of making this instrument, and other good and satisfactory consideration received by said party of the second part from said party of the first part, the receipt of which said party of the second part hereby acknowledges, it is agreed by and between the parties hereto that said party of the first part shall at all times and on all occasions have full right,

liberty, and authority, and as fully and in all respects the same as she would have if not married, to use, enjoy, manage, convey, mortgage, grant, alienate, and dispose of all and every part of her present and also of her future property and estate, of every kind and character, including, also, the right and power to dispose of same, and all and every part of same, by last will and testament, all and each and every part thereof as she shall from time to time deem fit and proper. Said party of the second part on his part further agrees, in consideration of the premises and foregoing, to disclaim and release, and does hereby disclaim and release, to said party of the first part, her heirs, legal representatives, assigns, legatees, and devisees, all and singular all and every right, claim, and estate, actual, inchoate, or contingent, and of every kind and character he might, would, or could have, hold, or acquire in, to, or upon all or any of said property by reason of said marriage, and by reason of being or by reason of having been the husband of said Cornelia Day Wilder.

Supplemental to this agreement, and as a part thereof, and for the purpose of definitely expressing the consideration left indefinite and unexpressed in the antenuptial contract proper, the parties entered into the following further agreement:

Whereas, Cornelia Day Wilder, called herein party of the first part, and T. E. W. Villiers Appleby, called herein party of the second part, each of St. Paul, Minnesota, have under date of May 14, 1897, entered into an antenuptial agreement and in duplicate, of which Exhibit A hereto attached is a copy; and

Whereas, it is thought it may be desirable to have said agreement, Exhibit A, recorded, and the parties hereto prefer that the full unexpressed consideration therefor should be shown by this another written agreement which need not necessarily at present be made public:

Now, that said unexpressed consideration may be fully shown in writing, this instrument is executed and delivered, and at the time that said original Exhibit A is made and delivered, to wit:

In consideration of the premises and of the making of said Exhibit A and the foregoing, I, said Cornelia Day Wilder, covenant and agree to and with said T. E. Villiers Appleby that by my last will I will (in case said marriage taking place, and he shall survive me) make provision and bequests by and through a trustee, or otherwise, of such ample form and magnitude as after my death will insure to said party of the second part, so long as he shall live (and remain unmarried), an annual income of ten thousand dollars, payable in equal semiannual instalments. In the event for any reason I shall omit so to do, or for any reason in law or otherwise said provisions in said last will shall be ineffectual for the purpose herein named, the said party of the second part shall, by reason of this instrument and the premises, have a good and valid claim against such property and estate as I may have at the time of my death for the payment of the annuity hereby promised and guaranteed, and it is the intention hereof that any court having jurisdiction in such matters is in such event authorized and directed to set apart out of such property and estate as I have at the time of my death and place under the control of some suitable trustee or management sufficient property or estate as will insure the payment of said annuity for the time and purposes herein specified: Provided always, and this promise and covenant is made with the reservation, that in the event said marriage does not take place or said party of the second part shall not be my husband at the time of my death, or in the event at the time of my death the parties signing said Exhibit A are not living together as husband and wife, or in the event said party of the second part shall marry after my death, then all and every claim and right on the part of said party of the second part to demand or receive said annuity or take any benefit under this agreement or in my estate shall thereupon and forthwith cease and be of no force or effect.

Subsequent to the marriage Miss Wilder, then Mrs. Appleby, made and signed in due form of law her last will and testament, in which, after making provision therein for her husband as agreed upon, and

100 M.—27

other bequests; she left the residue of her estate, all coming to her through the will of her father, to the "Amherst H. Wilder Charity," precisely as her father had by his will provided. That she intended by this contract and her will to carry forward and consummate the wishes of her father in the creation of this charity is the only conclusion the facts before us will warrant, and a mutual understanding in this respect is disclosed between father, mother, and daughter. She made no provision in her own will for her offspring, should any come to her from her marriage with Dr. Appleby. They were amply provided for by the will of her father. But she died childless, leaving, her surviving, only her mother and appellant, her husband, and for the latter she made provision substantially in accordance with the terms of the antenuptial agreement. Subsequent to her death appellant presented the will to the probate court, where it was duly allowed and admitted to probate. He also submitted to that court the antenuptial agreement, and obtained from that tribunal an order upon the trustees for the payment to him of the allowance provided for, which he accepted and received from time to time up to the trial of this cause in the court below; the last receipt given by him being marked without prejudice to his rights. The questions here presented arise from the decree of the probate court affirming the validity of the will and the antenuptial agreement.

The question at the threshold of the case, as we view the matter, is the alleged invalidity of the antenuptial contract; for, if the contract be valid, and, as we have heretofore observed, the will makes all the provisions for appellant thereby agreed upon, he has no further interest in the estate and no foundation upon which to predicate an attack upon the will. And while we shall, in the course of the opinion, for the purpose of ending for all time further strife and contention about the validity of the "Amherst H. Wilder Charity," dispose of the contention that the will is void, we first take up the objections to the antenuptial contract.

1. Marriage settlements of the general character of the one under consideration are matters of history, and have been upheld and sustained by the courts from the earliest times. They are not against public policy, but, on the contrary, are regarded with favor, as being conducive to the welfare of the parties and subservient to the best pur-

poses of the marriage relation, and are uniformly sustained when free from fraud or not expressly prohibited by some statute. 19 Am. & Eng. Enc. (2d Ed.) 1225. The property rights of each party may be thus definitely fixed and determined in advance, each being left to control and manage his or her separate property as if unmarried; and this, notwithstanding the statutory provisions fixing the relative rights of each in and to the property of the other. The statutes upon that subject are superseded by the contract which becomes absolute upon consummation of the contemplated marriage. Desnoyer v. Jordan, 27 Minn. 295, 7 N. W. 140; Hosford v. Rowe, 41 Minn. 245, 42 N. W. 1018. There is in the case at bar no controversy over this general proposition.

The contention of appellant is that this contract is void (1) because an unreasonable restraint of marriage, and (2) because under its provisions, if the wife chose not to live with him, he would take no part of her property at her death, and her estate would thereby gain $10,-000 a year; that this fact tended to induce a separation of husband and wife, at the option of the latter, and is a violation of the principles of public policy; (3) that the contract was without consideration; and (4) that an antenuptial contract cutting off the homestead right and the statutory one-third interest is not authorized by law and is void.

Taking up the points in the order stated, we come, first, to the contention that the contract is void as in restraint of marriage. On the general proposition that contracts in restraint of marriage are discountenanced by the law on broad grounds of public policy, and are consequently void and unenforceable, there is but one opinion. From the early case of Low v. Peers (1770) Wilmot, 364, to the present day, the courts both in England and this country, and no doubt of all civilized countries, have been and still are in complete harmony in so declaring. As remarked by Lord Mansfield in the case just referred to, matrimony was "one of the first commands given by God to mankind after the Creation, repeated again after the Deluge, and ever since echoed by the voice of nature to all mankind." See, upon the subject generally, Baker v. White, 2 Vernon, 215; Hartley v. Rice, 10 East, 22; White v. Equitable, 76 Ala. 251, 52 Am. 325; Chalfant v. Payton, 91 Ind. 202, 46 Am. 586; Sterling v. Sinnickson, 5 N. J. L. 756.

So we proceed in the light of this general rule to inquire whether the contract in question comes within its prohibitions. In so far as this particular feature of the case is concerned, the contract and the will cannot be differentiated from a view point of legal principles. If the contract be in restraint of marriage, within the authorities, then must the will be so held also. The same language is incorporated in both, and the will was but a performance or compliance with the terms of the contract. So that the authorities sustaining or refusing to sustain similar wills are pertinent to the questions affecting the validity of the contract. The question must also be considered from the standpoint that the law makes no distinction between persons. What is law for the wife is also law for and governs the rights of the husband in such cases. They stand upon an equality, and, if the terms of this contract would be valid as to the wife, they are equally so as to appellant. Bostick v. Blades, 59 Md. 231, 43 Am. 548.

By the terms of the contract Miss Wilder was given, after marriage, full right, liberty, and authority, as fully and completely as though unmarried, to use, enjoy, convey, mortgage, grant, alienate, or dispose of all, or any part or portion, of her future property and estate, of every kind and character, and also the right to dispose of the same by last will and testament in such manner and to whatever object or purpose she might choose; and appellant thereby, for the consideration granted by the contract, expressly disclaimed and released to her, her legal representatives, legatees, and devisees, all and singular every right, claim, or estate, actual, inchoate, or contingent, that might accrue to him by reason of the contemplated marriage. These stipulations were embodied by the parties in the principal contract. The principal consideration was the contemplated marriage, but an additional one was incorporated in the separate document above quoted at length. The reason for the separation of the two writings is set forth in the second, and is found in the recited fact that in the opinion of the parties it might become necessary to record the main contract, and, as it was not deemed essential to its validity that the full consideration therefor be made public, it was concluded advisable to separate the same. By this supplemental writing Miss Wilder expressly covenanted and agreed, in consideration of the release and surrender of his rights in and to her property, to make provision and bequests by and

through a trustee or otherwise of such ample form and magnitude as after her death would insure to her husband, so long as he should live and remain unmarried, an annual income of $10,000; but, if he should remarry after her death, then and in that event the income should cease and all benefits under the contract should thereupon terminate. Provision was made in the will substantially as here agreed upon, with the further provision, not required by the contract, that, in the event appellant remarried after the death of his wife, he should have and receive from her estate, the income of $10,000 a year being cut off by such remarriage, the sum of $25,000 in full of all claims to her estate.

The contention that the contract was void as in restraint of marriage was presented by exhaustive arguments of counsel, each supporting his view with voluminous citations of authorities, to all of which we have given a patient and thoughtful consideration. Our conclusion is that the contract did not tend to restrain marriage within the meaning of the law, at least not to such an extent as to make it obnoxious to legal principles, and therefore that it was and is valid and binding upon appellant. The parties to the contract had marriage in view at the time of its execution, and there was a total absence of any intention to prohibit appellant from consummating such other marriage or marriages, after the death of his first wife, as his inclinations might prompt. The provisions of the contract constituted a limitation, not upon the right to remarry, but upon the continuance of the annuity promised and secured. There is no stipulation that he shall not remarry. He is perfectly free to form new relations in that respect; but, if he does so, he relinquishes his right to his first wife's bounty. There is nothing unreasonable in this condition, especially as applied to this particular case. He, the intended husband, was not a person with wealth at the time of the transaction. His intended wife possessed the property, the wealth; and no sound reason can be advanced to sustain the view that she was under legal or moral obligation to provide him an income with which to support in comfort and luxury a new wife. If he deems it advisable or proper to remarry, he is at liberty to follow his personal inclinations, and, in the event he does so, is entitled to receive

under the will the comfortable sum of $25,000 in lieu of the original income provided in case he remained unmarried.

Similar provisions are found in numerous instances in the reported cases, both with respect to antenuptial contracts and wills, and they have, with few exceptions, been sustained against the contention here made, namely, that they are void as in restraint of marriage.

In the case of Jones v. Jones, 1 Q. B. Div. 279, it appeared that the testator left all his property to three women, to be shared equally, and, in event of the death of one, by the survivors, but, subject to the following condition as to one of them: "Provided the said Mary, daughter of the said Jeminina, my sister, shall remain in her present state of single woman; otherwise, if she shall alter her present state of single woman, and bind herself in wedlock, she is liable to lose her share of the said property immediately, and her share to be possessed and enjoyed by the other mentioned parties, share and share alike." Justice Lush, in disposing of the contention that the bequest was in restraint of marriage, said: "I am of the same opinion. The question is whether we are to construe this devise as a provision for the testator's niece while she remains single, or as a condition that she shall remain in a state of celibacy under the penalty of losing her share. Now there is nothing to lead me to suppose that any such condition was intended by the testator, and I rather think that to imply such a condition would be to defeat his intention. We ought to take the words in such a sense as to carry out the object of the testator, unless it is illegal; and, as I read the words, the testator only meant to provide for her while she was unmarried. I think that there is nothing in these words which compels us to think it was the testator's object that his niece should never marry at all."

Investigation does not confirm the suggestion of counsel for appellant that this case has been discredited or overruled. The rule there laid down and applied was treated as the settled law of England in Morley v. Rennoldson, 2 Hare, 571, where Vice Chancellor Wigram said: "I am satisfied, from an examination of the authorities, that there is no reason to alter my opinion, that a gift until marriage, and when the party marries then over, is a valid limitation. In the case of a widow there is no question of the validity of such a limitation."

And also in Jordan v. Holkham, Amb. 209, in which the court held that, where an estate was given during widowhood, it was determinable by a second marriage. Again, in Barton v. Barton, 2 Vernon, 308, where an annuity during widowhood was upheld.

. In Allen v. Jackson, L. R. 1 Ch. Div. 399, the testatrix gave an income to her niece, an adopted daughter, and her husband, during their joint lives, and to the survivor after the death of either, with the provision that if the husband survived and married again, the income should cease. The contention that the bequest was in restraint of marriage was not sustained. The court there said: "It seems to have been laid down by a great number of cases that what is called a general restraint upon marriage is against the policy of the law. That, of course, can be the only principle which can be the foundation of any rule at all on the subject. The general restraint of marriage, for some reason or other, probably a good reason, is to be discouraged, and a condition subsequently annexed by way of forfeiture to a marriage is therefore void. That is the law both as to man and woman. But it has been most distinctly settled that with regard to the second marriage of a woman that law does not apply; that, whether the gift be a gift to a widow by a husband or a gift to the widow by some other person, the law does not apply to that case; and that such a condition is perfectly valid."

The authorities are none the less harmonious in this country. In Jones v. Jones, 1 Colo. App. 28, 27 Pac. 85, it appeared that a husband had by contract agreed to pay his divorced wife $45 a month so long as she should not marry again. The court held that the limitation was not a condition in restraint of marriage and that the contract was valid. The language of the court in that case is pertinent to the one at bar. The court said: "This is not a contract in restraint of marriage. No obligation is imposed upon the woman not to marry. She is at liberty at any time to marry whom and where she will. The condition is that he will pay the $45 per month, presumably for her maintenance and support, so long as she may remain an unmarried woman; and this was her situation, as averred in the complaint, at the time of the institution of the suit. There is nothing in the agreement, so far as we can discover, which in any way involves the question of morals or public policy." A contract

similar to the one in the case at bar was sustained in Christy v. Marmon, 163 Ill. 225, 45 N.·E. 150, and in Vincent v. Spooner, 2 Cush. 467, though the precise point here before the court does not seem to have been raised. See, also, Mann v. Jackson, 84 Me. 400, 16 L. R. A. 707, 24 Atl. 886, 30 Am. St. 358; Giles v. Little, 104 U. S. 293, 26 L. Ed. 745; Summit v. Yount, 109 Ind. 506, 9 N. E. 852; Bennett v. Packer, 70 Conn. 357, 39 Atl. 739, 66 Am. St. 112; Knight v. Mahoney, 152 Mass. 523, 25 N. E. 971, 9 L. R. A. 573; Com. v. Stauffer, 10 Pa. St. 350, 51 Am. Dec. 489. The authorities are reviewed, and the distinction between conditions subsequent and conditional limitations, as applied to the subject in hand, is clearly pointed out in Arthur v. Cole, 56 Md. 100, 40 Am. Rep. 409. Within these authorities, as well as upon principle, we have no difficulty in reaching the conclusion that the conditions imposed by the antenuptial contract, and also by the will, limiting the duration of the annuity there provided, were not conditions subsequent, as those conditions are properly understood, but limitations terminable at the will and election of appellant. Further, even if construed as conditions subsequent, they are such as the law sanctions, and are not void. The general rule that contracts in restraint of marriage are void has no application to second marriages. The uniform trend of judicial decisions sustains this statement.

The reason for the rule as to first marriage has no substantial force when applied to a second marriage. Neither the conservation of morals nor public policy furnish a basis for the rule as applied to the right of a husband or wife to withhold his or her estate from passing to the support of a second husband or second wife, as the case might be. And the authorities declare that the rule has never been extended to second marriages.

The precise question arose in Allen v. Jackson, L. R. 1 Ch. Div. 399, referred to above, and the court distinctly held that the rule did not apply to a second marriage. The question was fully considered in Bostick v. Blades, 59 Md. 231, 43 Am. 548, a case involving a devise by the wife of certain property to the husband, so long as he should remain unmarried after her death. The court held the will valid on the ground that the rule referred to did not extend to second marriages. The court also considered at some length whether

the rule should be limited to the second marriage of the wife, or whether it included both husband and wife. Upon that subject the court said: "In the absence of any binding authority to the contrary, we are of opinion that there is no good and substantial ground for maintaining a distinction between a condition imposed in restraint of a second marriage of a woman and a like condition in restraint of a second marriage of a man. As the one is valid and effectual, so is the other." In Knight v. Mahoney, 152 Mass. 523, 25 N. E. 971, 9 L. R. A. 573, the testator gave his property to his wife, "so long as she remains my widow." She married again after her husband's death, and the controversy arose whether the provisions of the will were valid. The court said that the weight of authority sustained devises and bequests conditioned to terminate upon second marriage, citing, in support of the decision, 2 Pomeroy, Eq. Jur. 933, White v. Sawyer, 13 Metc. (Mass.) 546, Loring v. Loring, 100 Mass. 340, Gibbens v. Gibbens, 140 Mass. 102, 3 N. E. 1, 54 Am. 453, and some of the cases heretofore referred to.

It is unnecessary to discuss the reasons for the rule. The welfare of children by the first marriage is an element entering into consideration in determining the validity of such limitations, as well as the right of persons freely to enter into the marriage relation as their station in life and inclinations may justify and prompt. But no sound principle, founded upon either moral or legal obligation, extends the right of either husband or wife to retain the property of the other, in the face of lawful restrictions to the contrary, for the purpose of supporting and maintaining another spouse. The fact that appellant had no children by this marriage does not, as a matter of law, relate back and render the restrictions or limitations of the antenuptial contract unreasonable. We have examined fully all the authorities cited by appellant, and find in them nothing in substantial conflict with the conclusion indicated. Many of the cases so cited refer to and treat of contracts expressly providing against marriage at all, and are not in point. In some instances cases seemingly upholding their position have been overruled and do not now express the law of the states from which cited. Others have no reference to estates granted by husband to wife, or wife to husband, terminable upon second marriage.

426.                    100 MINNESOTA REPORTS

2. The second proposition of appellant is that the antenuptial contract was void, because it tended to induce a separation between husband and wife. This contention is founded upon that part of the contract, repeated in the will, wherein it was provided that if, at the death of Mrs. Appleby, appellant should not be her husband, or in the event they shall not then be "living together as husband and wife," any and all right to the annuity shall "cease and be of no force or effect."

It is elementary that contracts which tend to induce a separation of husband and wife are, upon the same principle of public policy which discountenances contracts in restraint of marriage, utterly void and of no force or effect. There is but one voice in the decisions upon this question. Cartwright v. Cartwright, 22 L. J. Ch. 841; H. v. W., 3 Kay & J. 382; Brown v. Peck, 1 Eden, 140; Randall v. Randall, 37 Mich. 563; Boland v. O'Neil, 72 Conn. 217, 44 Atl. 15; Hutton v. Hutton's Admr., 3 Pa. St. 100. But the contract under consideration does not bring the case within this principle. A broad view of its provisions will not justify or warrant the conclusion that its purpose was to facilitate, or that it tended in any measure to induce, a separation of the parties. On the contrary, it is clear that its purpose and tendency was to induce continued cohabitation as husband and wife. Appellant was firmly obligated to comply with the contract in this respect, and a failure forfeited the annuity. It was not incorporated in the contract to furnish the wife, upon some whimsical or capricious notion, induced, perhaps, by a condition of not unusual occurrence, a family jar, not ordinarily of long duration, an excuse to separate from her husband. The contract held out to her, as in many of the cases cited by appellant, no pecuniary or other inducement to bring about a separation. Causing one would result in no benefit or advantage to her. The result would in such an event only increase the charity fund to which she devoted her estate.

It is unnecessary to enter into an extended discussion of the authorities upon this subject. Many analogous cases are found in the books, but the decisions all turned, where the contracts were held void, upon the construction of the particular language and phraseology of each. The case of In re Hope Johnstone (1904) L. R. 1 Ch. Div. 470, is an instructive one, and may be referred to. In that

case, Hope Johnstone, the husband, conveyed certain property in trust for the benefit of his wife for life, "or so long as she shall continue the cohabiting wife or the widow." It was there contended that this was an inducement to separation, and hence void; that a separation would result beneficially to the husband; and that he could by improper treatment of the wife bring about a separation and reap the benefit of his wrongful conduct. The court brushed these arguments aside and sustained the contract. The case is squarely in point.

Moreover, the contract in the case at bar has been fully performed by the wife. By her will she made the provision contemplated by the contract, which appellant has accepted, and he is in no position to claim that the contract was void, because, perchance, she might have so shaped her conduct before death as to have justified a neglect or refusal to perform; because if she had, for capricious reasons, as suggested, separated from appellant, compliance with the contract could not have been compelled. The fact that there was no separation, and the further fact that Mrs. Appleby fully performed the contract, eliminates from consideration conditions that "might have been."

The authorities cited by appellant in support of this feature of the case, aside from those upholding the elementary or general proposition that contracts which tend to induce a separation of husband and wife are void, are not in point. In Neddo v. Neddo, 56 Kan. 507, 44 Pac. 1, the antenuptial contract expressly provided that if the parties could not live amicably together, and should separate, either by abandonment or divorce, the property rights of each should remain as before the marriage; each thereby relinquishing all rights in the property of the other. The court held that the contract expressly contemplated a separation, invited disagreement and abandonment, and made the same productive of profit to the husband, who was possessed of considerable property, the wife having none of any consequence, should he see fit to provoke a disagreement between them. Unlike the case at bar, he did in fact desert and abandon his wife without cause, and sought to enforce the contract against a claim by the wife for alimony in the action, which was for a divorce, and the court held that it was void and declined to give force or validity to its provisions. There was no separation in the case at bar, and the contract held out to Mrs. Appleby no pecuniary or other inducement to bring

one about. On the contrary, she fully complied with all its provisions and made no effort to avoid compliance therewith. The case of Randall v. Randall, 37 Mich. 563, involved the validity of a contract made in consummation of an agreement for separation which the court sustained. In Boland v. O'Neil, 72 Conn. 217, 44 Atl. 15, the contract expressly stipulated for a separation of husband and wife until such time as the husband might deem proper to receive her again at his home. The court held that the contract was void. The case is not here in point.

3. It is next urged that the contract is void for want of consideration. This contention requires no extended mention. The marriage was a sufficient consideration. Desnoyer v. Jordan, 27 Minn. 295, 7 N. W. 140; Hosford v. Rowe, 41 Minn. 245, 42 N. W. 1018; McNutt v. McNutt, 116 Ind. 545, 19 N. E. 115, 2 L. R. A. 372. There was no fraud in the execution of the contract; and the suggestion of counsel that appellant had no alternative but to sign, when it was presented to him a day or two prior to the marriage, is without special force. Appellant was at the time twenty nine years of age, a man of education and intelligence, and must be taken to have acted freely and understandingly. The provision made for him, an annual income of $10,000, was generous and liberal. No undue influence or compulsion appears to have been exerted or employed to secure his assent, and the rule "in terrorem," invoked by appellant, does not apply. The fact that the engagement of marriage between the parties was entered into several months before the formal written marriage settlement was made and signed does not eliminate or exclude the marriage as a consideration for that agreement. Even though the original engagement was absolute, and not coupled with an express or implied understanding as to the marriage settlement, the parties by the subsequent written contract are taken as a matter of law to have entered into new promises, including the engagement of marriage, and the original agreement must be treated as rescinded, or absorbed and embodied in the new. Lattimore v. Harsen, 14 Johns. 330. The Supreme Court of Indiana in McNutt v. McNutt, 116 Ind. 545, 2 L. R. A. 372, 19 N. E. 115, a case involving this identical point said: "Turning from the main path to a point which counsel make, and which leads us aside, we affirm that the fact that a promise to marry was made

six years before the writing was drawn and signed does not impeach the consideration of the contract. The written instrument, as the authorities agree, merges mere oral negotiations, expresses the matured agreement of the parties, and supplies the best evidence upon the subject of property rights. If the parties put in writing their agreement concerning their property, and subsequently marry, the agreement, as written, is the source of evidence, and furnishes conclusive proof of the matured and final contract." This is in line with the authorities generally on the subject, and, as before remarked, the marriage was a sufficient consideration to support the contract. See, also, 7 Columbia Law Review, 203; 21 Cyc. 1246.

4. The fourth contention is that an antenuptial contract, cutting off the homestead right and the statutory one-third interest of a husband or wife, is unauthorized and void. If this position were sustained, very little would be left of the law authorizing contracts of this character. As we have heretofore stated, marriage settlements are uniformly sustained by the courts when not prohibited by statute. The law on the subject is correctly summed up in Desnoyer v. Jordan, 27 Minn. 295, 7 N. W. 140, where the court said: "In the absence of a valid agreement between the parties, the law fixes the rights which either the husband or the wife shall have in the property of the other, both during life and after the death of either. But it has always been permitted to the parties in contemplation of marriage to fix those rights by agreement, equitably and fairly made between them, and to exclude the operation of the law in respect to fixing such rights, so that, so far as the agreement extends, it, and not the law, furnishes the measure of such rights." The purpose and object of such settlements is to fix definitely the property rights of the parties, to the exclusion of those existing by virtue of statute or common law, and sound reason and policy sustain efforts in this direction. The contention of appellant on this branch of the case is based upon the provisions of sections 4470 and 4471, G. S. 1894. The first of these sections grants to the surviving husband or wife a life estate in the homestead. The second provides that the surviving husband or wife

Shall also be entitled to and shall hold in fee simple, or by such inferior tenure as the deceased was at any time during

· coverture seised or possessed thereof, one equal undivided one-third of all other lands of which the deceased was at any time during coverture seised or possessed, free from any testamentary or other disposition thereof to which such survivor shall not have assented in writing.

It is urged that, because appellant did not assent to the terms of the contract, and the provisions of the will of his wife by which her property in the main was given to the Wilder Charity, after the marriage, the antenuptial contract is inoperative and void. We are wholly unable to adopt this view of the question. The antenuptial contract, being sanctioned by law, was a sufficient assent, within the meaning of the statute, to the power and right of Mrs. Appleby to dispose of her property in the manner shown by her will. Any other conclusion would result in limiting marriage settlements to property not disposed of by some statutory regulation.

5. It is further contended that in and by the provisions of her will Mrs. Appleby violated, or at least failed fully to carry out, the terms of the antenuptial contract, and thus released her husband therefrom. This is founded upon the theory that by the terms of the contract appellant was given a valid claim against the entire property of his wife for the purpose of securing payment of the annuity, and that by the terms of the will a part only thereof is directed to be set apart by the trustees for that purpose. The objection is clearly not well founded. The terms of the contract do not contemplate that the entire estate of Mrs. Appleby should be tied up for the sole purpose of insuring the payment of this annuity. The income of $10,000 is provided for in express language, and by the terms of the will ample authority is conferred upon the court having charge of her estate, or the administration of the charity to which her estate was devoted, to protect the rights of appellant in this respect. Indeed, the order of the district court modifying the decree of the probate court fully provides for all contingencies that may arise in that regard. It provides that, if the securities set apart shall at any time become insufficient to produce the annuity, nothing therein shall be construed as prejudicing his right by appropriate proceedings to resort to the body of the estate. This is all that appellant is in position to insist

upon, and his income can cease only in the improbable event that the whole estate may at some time in the future be inadequate to produce it. It follows that the terms of the will in this particular are in substantial compliance with the contract.

6. It is also contended that the will of Mrs. Appleby, in so far as it creates a trust for charity, is void, and that appellant takes the estate given thereby to the charity fund; for by the antenuptial contract he released his rights and interests in his wife's property to her heirs only, and he is her only heir. The latter part of this contention, in view of the conclusion we have reached as to the first, requires no consideration. In view of the earnestness with which counsel presented the claim that the will in the respect stated is invalid, we have re-examined the question with special reference to the particular features of the present will. The decision in Watkins v. Bigelow, 93 Minn. 361, 101 N. W. 497, wherein the will of Mrs. Wilder, to the same effect and purpose as that of Mrs. Appleby, and of which the latter is supplemental, sustains the general proposition that the wills are, if in substance the same, valid. It is unnecessary to enter into further discussion of that question. All features of the matter were fully covered by the opinion in the Watkins case, which we follow and apply. It is not contended that the former decision is erroneous, but it is strenuously urged that the will here under consideration differs in material respects from that of Mrs. Wilder and clearly violates the statutes against uses and trusts. A very thorough comparison of the two documents does not, in point of substance, sustain this view of the case. While the language of the two wills differs in many respects, the main object and purpose of each is clearly indicated to be identical, and, construed as a whole, we have no difficulty in reaching the conclusion that they are for all practical purposes of the same legal effect. It would serve no useful purpose as a precedent to set out the two wills for purposes of comparison, and we close this branch of the case with the remark that every reasonable intendment should be indulged in favor of the will. The rights of heirs having lawful claims upon the bounty of the deceased are not involved, and her surviving husband, appellant, has been liberally provided for in accordance with the terms of the antenuptial contract. The charity founded arose from noble sentiments toward the worthy

poor of St. Paul, and should not be defeated by an application of technical rules of law.

7. The last point presented assumes the validity of the will and involves the construction of the twelfth subdivision thereof. This part of the will, so far as here material, provides as follows:

> In the event I am the owner of the same at the time of my death, and we are then living together as husband and wife, I will, devise and bequeath to my said husband, Dr. T. E. W. Villiers Appleby, the use and enjoyment, so long as he shall occupy the same and remain unmarried, the following property in St. Paul, Minnesota.

Here follows a description of the property, which is known and referred to in the record·as the "Wilder homestead." The will then directs the executors of the will, as soon after her death as convenient, to set apart from her estate an amount sufficient to produce an income of not less than $5,000 to be used in paying taxes and assessments upon the property and the cost and expense of maintaining the same as a residence so long as appellant should remain unmarried and continue to occupy the same.

It is a conceded fact that the property here attempted to be devised to appellant did not in fact belong to the testatrix, Mrs. Appleby, at the time the will was executed, nor at the time of her death. It was the property of her mother, Mrs. Wilder, who was living and in the possession of it when Mrs. Appleby died. Two questions are here presented: (1) It is claimed by appellant that this attempt to devise the Wilder homestead to appellant, title to which was in Mrs. Wilder, coupled with certain bequests to Mrs. Wilder, became effective upon the acceptance by her of such other bequests, under the doctrine of equitable election, applied in Brown v. Brown, 42 Minn. 270, 44 N. W. 250, and Sorenson v. Carey, 96 Minn. 202, 104 N. W. 958; and (2) that if this contention be not sustained, and the court should hold that appellant has no claim to that property, inasmuch as $5,000 a year was directed by the will to be expended in the maintenance of the property during appellant's rightful occupancy thereof, and because of the fact that without fault on his part and because of cir-

cumstances over which he had no control and were unforeseen by the testatrix, the money so directed to be applied cannot be applied in the particular manner directed, it should go to appellant for his general use and benefit.

We are unable to sustain either of these contentions. To the first it is sufficient to say that Mrs. Appleby made no absolute devise of the homestead to appellant. The devise was expressly conditioned upon her ownership at the time of her death, and did not require of her mother, even though she accepted bequests made to her, to elect whether to take them or retain her own home. The conditional feature of the devise to appellant relieved her of this equitable obligation. Sherman v. Lewis, 44 Minn. 107, 46 N. W. 318; Havens v. Sackett, 15 N. Y. 365; Charch v. Charch, 57 Oh. St. 561, 49 N. E. 412. Mrs. Appleby, when executing her will, undoubtedly expected to outlive her mother, and that the homestead would in that event become her property. The possibility of such result not occurring, she conditioned the devise to her husband accordingly. As to the second contention, we need only say that it is evident from the will that the sole object and purpose of creating the $5,000 fund was to maintain the homestead in suitable condition for use and occupancy by appellant—to relieve him of that burden. It was clearly not intended for his personal benefit, and he is in no position to insist that it be paid him, to be devoted to purposes other than those intended by his wife. Tilden v. Green, 130 N. Y. 29, 28 N. E. 880, 14 L. R. A. 33, 27 Am. St. 487; Levy v. Levy, 33 N. Y. 136.

This covers all questions presented in the briefs requiring consideration, and, as our conclusions are in harmony with those reached by the learned trial judge, his order in the premises is affirmed.

JAGGARD, J. (dissenting).

The antenuptial contract was in my opinion void because of the clause providing that the husband should have no part of the wife's estate at her death in case they were not then "living together as husband and wife."